OPINIÓN of the court, by
Judge Owsley.
Beau-champ, on the 26th of February 1795, executed to Ewing the following writing obligatory, to wit : “ Whereas I have bargained arid sold to Charles Ewing a negro fellow, to be paid to him next fall, this shall oblige me to pay to him or his order forty shillings per month ⅛ cash for every month said negro, or a good hand in *42 Jiis room, shall be absent from this date : as witness ⅛⅜ hand,” &c. And having failed to perform the stipulations on his part, Ewing prosecuted an action thereon against him. Beauchamp pleaded — 1st, That on the 25th day of Febníáry 1/95, he executed his obligation, to the plaintiff, for the payment of one hundred pounds, on the 15th day of December then next ensuing, which said sum might have been discharged by the payment of one first rate negro fellow (as is described in said bond or obligation) ; and it was afterwards, to wit, on the 26th day of February 1795, at the coünty of Washington at the circui.t aforesaid, corruptly agreed between said plaintiff and defendant, that the said defendant should pay to the plaintiff the sum of forty shillings per month for the hire of the negi-o fellow aforesaid ; and the defendant then and there made his note in writings which i§ the note declared upon ; and this is the same negro mentioned in the 100/. obligation, whereby a greater interest than five per cent, per annum was received upon the said sum of 100/. and this he is ready to verify, &c. ,⅝⅜.
And for further and second plea the defendant pleaded, that afterwards, to wit, on the 25th day of February in the year 1795, in the county ánd circuit of Nelson, the said plaintiff did institute his suit and implead the said defendant by process of law in the late district court of Nelson, upon the said obligation for 100/. and did, by the verdict of a jury and the judgment of said court, recover against the said defendant the said sum of motley, with lawful interest thereon, and this he is ready to verify, &c.
And for further and third plea, he pleaded, that af-terwards, to wit, on the 8 th day of August 1795, at the county of Washington, to wit, at the circuit aforesaid, an article of agreement was entered into between the plaintiff and defendant, whereby it was stipulated that the defendant should pay Walter Beall 228/. (which defendant avers he did pay) and was agreed that said sum should be applied to the payment of part of thfe 100/. for which the hire note was given, which should be applied towards the payment of a certain tract of land ; and the defendant avers the negro hire was in and for the forbearance of payment of the' said 100/. bond given i» part of the consideration of the land aforesaid *43 bought by defendant of plaintiff, whereby the defendant became and was released from the hire of said negro ; and of this he puts himself upon the country.
And for further and fourth plea, the defendant pleaded, that afterwards, viz. on the 8th day of August 1795, at the county of Washington, viz. at the circuit aforesaid, an article of agreement was entered into between the plaintiff and defendant, whe.reby it was stipulated that the defendant should pay Walter Beall 228/. (which defendant avers he did pay) and that a part of the 228/. should be applied towards paying a part of the 100/. bond for which the writing obligatory was given to the defendant, and thereby the defendant says he was released from paying the said hire, the aforesaid forty shillings per month, and this he is ready to verify, &c.
To the first, second and third pleas the plaintiff, Ewing, filed demurrers ; after vvhich, at the March term, of the Nelson circuit court, the- parties personally appeared, and by consent obtained an order referring the suit to the arbitration and determination of William May and Joseph Lewis, and their award to be made the judgment of the court. After which the following award was made and returned to court by the arbitrators, viz. “ In obedience to an order of the circuit court of Nelson county, appointing us, the undersigned, as arbitrators to settle the suit depending in the said court wherein Charles Ewing is plaintiff and Jereboam Beau-champ is defendant, (in covenant) we being first sworn before William-Kendall, Esq. a justice of the peace for said county, after hearing the testimony on both sides and an examination of the papers, we find that there was a bond given by the said Beauchamp to the said Ewing, for 100/. or a likely negro fellofy between the age of 17 and 24 years ; which bond is dated the 25th of February 1795 ; that the said Charles Ewing brought a suit (on the said bond) against the said Jereboam Beauchamp, on the 13th day of August 1799 ; that there was a judgment rendered on the 37ih day of October 1S01 for one hundred and twenty-nine pounds seven shillings damages ; that on the 26th day of February 1795, the said Beauchamp gave the said Ewing a bond for forty shillings per month, for the hire of a negro fellow, till paid. We are of opinion that the said Beauchamp ought to pay the said Ewing the hire of *44 the negro agreeable to his bond ; that the hire of the negr0 should cease on the 27th day of October |801 (at which time the above judgment was obtained). We are likewise of opinion that the said Beauchamp should have a credit for ¾9/. 7s. which appears to us yras the interest on the said 100/. bond, up to the time of the judgment; that the said JBeauchamp also have a credit for 18/. which is entered on said bond for negro hire, and also that said Beauchamp should have a credit for 2/. paid to Butler for digging a race, which is likewise entered on said bond for hire; that after giving said Beauchamp the above credits, to come out of the bond for negro hire, we find a balance due to the said Charles Ewing on the said bond, of $302 17 cent? (being 90/. 13s-) which we do award shall be paid unto said Charles Ewing by sajd Jereboam Beauchamp, and all legal costs. Given.under our hands and seals this 26th day of March 1804. William May (seal) J, Lewis (seal),
The circuit court, upon motion, refused to enter the award as the judgment of the court; but for errors apparent upon the face of the award and papers therein referred to, quashed it. After which other pleadings Ufe re filed, and on the trial a verdict and judgment were obtained by the defendant Beauchamp ; from which Ewing has prosecuted this writ of error.
The only question which we deem necessary to consider in the determination of this cquse, is, whether the circuit court decided correctly in quashing the award ? That decision is endeavored to be supported on the part of Beauchamp, on the grounds that the award and other papers in the cause shew the contract upon which the suit is founded was usurious. Whether the contract was usurious, seems to have been a point directly in issue between the parties before the cause was submitted to arbitration; but they no,t being willing that the decision should be made by the court in the ordinary course of administering justice, withdrew the cause from the court, chose their own judges, whose judgment on the very point submitted to them for their determination, has been set aside, because, as jt is urged, they mistook the law and decided erroneously. Whether the arbitrators misjudged the law in their decision between the parties, we deem not necessary to be examia- *45 pd ; for it is conceived that from the plain and obvious meaning of the act of 1798, concerning awards, no award should ever be set aside or invalidated on the ground ®f the misjudgment of the arbitrators. That act provides that the award returned jiv the arbitrators shall not be invalidated, set aside or appealed Irons, unless it shall be made appear to the court that such aivard tyas obtained by corruption, evident partiality or other undue means. It is evident that the misjudgment of {he arbitrators in a point directly ip issue between the parties, and submitted to them for their decision, is not embraced by the act as a cause for which the award can be invalidated. - T° permit such a construction would in effect defeat the salutary provisions of the law. For jf because the court may think the law different from what the arbitrators have decided, they will quash an award, in every case where an issue of law is submitted the ayvard cannot finally and certainly decide the controversy, but only place the cause in a different attitude for the decision of the court on the point of law. The parties thereby would be effectually precluded from having the benefit of a final decision of their cause, by judges of their own choosing, although the award may be made fairly, without corruption or partiality or other undue means. It is true it is said by some of the elementary writers on the law of England, that an award may be set aside for a plain mistake in the body of the award. How far that position is correct, according to the rules of the common law, we conceive unnecessary now to inquire. > In the case of Baker's heirs vs. Crockett, Hard. 403, (a) this court said “ that either as at common law or in equity, with or without the statute, an award cannot be set aside for a mistake of law apparent in the body or face of the avyard.”
Upon the whole, we think it evident that tinder the statute of 1798, no award can be set aside barely for a misjudgment of the law by the arbitrators. We think, therefore, whether the arbitrators did or did not misjudge the law of the case submitted to them in this case, that they have dope nothing more than discharge the trust confided to them by the parties, and that their award should not have been quashed. The judgment of the circuit court is therefore erroneous, and must be *46 reversed with costs ; the cause remanded to that court for a judgment to be entered on the award in favor o£ Ewing. :

Ewing's adm'r. vs. BeauchampBeauchamp, vol, 3- ⅜⅜6,