CASE 38—EQUITY—DECEMBER 18, 1880.

# Adams' adm'r v. Ringo.

| 79 | 211 |
|----|-----|
| 99 | 314 |

### APPEAL FROM FLEMING CIRCUIT COURT.

1. If arbitrators act upon matters not submitted to them, and not within their authority, their action that far will be stricken out and disregarded; the residue will be enforced.

2. It is as true of hearings before arbitrators as of trials in court, that it is the duty of each party to present his whole case, as well as the proof to sustain it.

3. The ancient niceties and technicalities applied to arbitrations have given way to a more liberal and rational construction. This mode of ending litigation is to be encouraged.

4. A mere mistake as to the law on the part of arbitrators will not be sufficient to set aside their award.

W. H. CORD FOR APPELLANT.

1. There is no allegation of fraud or corruption against the arbitrators, and on this ground alone can the award be impeached. (53 Barb., 342; Parsons on Con., 215; 2 J. C. Rep., 551; *Ib.*, 339; *Ib.*, 101; 6 Pick., 148; 53 Barb., 342; 2 Story's Eq., 1454; 37 Howard, 20; *Ib.*, 88; 44 Vermont, 523; 2 Dutcher N. J. Rep., 130.)

2. A mistake of the arbitrators as to the law will not vitiate the award. (6 Vesey, 282; 2 Mad. Rep., 9; 1 Swanston, 55; 1 Vesey, 369; 9 *Ib.*, 365.)

ANDREWS & SUDDUTH FOR APPELLEE.

1. Appellant waived the award by his second amended petition. (Carrico v. Lilly, 3 Mar., 398.)

2. The award is void, because the arbitrators acted upon matters not embraced in the reference to them. (2 Parsons on Contracts, 690; 13 Howard U. S., 26.)

3. The arbitrators made such mistakes of law and fact as to indicate gross ignorance or negligence. (2 Parsons on Con., 701; Ev. Jur., vol. 2, 1455; Waite's Actions and Defenses, vol. 6, 550; Lashbrook v. Lee, 9 Dana, 214; 3 Atkyns, 494; Callant v. Downey, 2 J. J. Mar., 348; Burnam v. Burnam, 6 Bush, 392.)

4. The award does not dispose of all matters referred to the arbitrators. (Burnam v. Burnam, 6 Bush, 392; 1 Dana, 351; 11 Wheat., 446; Orear v. Singleton, Sneed, 65; Turpin v. Banton, Hardin, 320; 5 Wheat., 394.)

5. The arbitrators and umpire acted together. (14 Johnson, 368; 14 B. Mon., 294; Royse v. McCall, 5 Bush, 696; 6 Dana, 93.)

CHIEF JUSTICE COFER DELIVERED THE OPINION OF THE COURT.

The appellant sued the appellee for the settlement of a partnership in merchandising, which had existed between his intestate and the appellee, J. P. Ringo.

The sum of two thousand dollars was alleged to be due to the plaintiff; but the petition concluded with a prayer for a settlement of all matters pertaining to said partnership.

The parties agreed out of court to submit the entire controversy to the arbitrament of R. W. D. Hunt and W. S. Faut, and their umpire.

The arbitrators made an award, which concludes as follows: We do "hereby award that the said Joseph P. Ringo, surviving partner, pay to the said Charles Dougherty, as the administrator, &c., of said John Adams, the sum of nineteen hundred and eighty-seven dollars and twenty-seven cents, with interest at six per cent. per annum from the 6th of July, 1876; and as to the uncollected notes of $390.97, and lot of accounts of $807.21, making of them $1,198.18, we hereby also award that they be equally divided between plaintiff, who is to have half thereof, and the defendant one half, and to be so divided, having regard to solvency and value, all probabilities considered. Given under our hands the 6th of July, 1876.

[Signed]
      "Wm. S. Faut,
      "R. W. D. Hunt,
        "*Arbitrators.*

"As the umpire, and fully acting therein, I hereby concur in said award.

[Signed]        Wm. Grannis."

Appellee having refused to perform the award, appellant filed an amended petition, setting it up, and praying for the money awarded.

Adams' adm'r v. Ringo.

The appellee answered, setting up grounds for vacating the award, viz:

1. That the arbitrators and umpire acted together in deciding all questions that arose before the arbitrators, whereas he should only have acted when there was a disagreement between them.

2. That the arbitrators took into account, and settled and reported upon matters not submitted and not brought into controversy by the petition.

3. That they did not settle all matters growing out of said partnership which were unsettled.

4. That the decision of the arbitrators "is palpably erroneous and unjust *in re minime dubia.*"

The case was referred to the master, who took proof, and reported a small balance in favor of the appellee. The court confirmed the report, and rendered judgment pursuant thereto, from which this appeal is prosecuted.

1. The evidence fails to sustain the first objection. It does not show that the umpire acted in the decision of any questions, except such as the arbitrators differed about, and this was the duty of his office. It is shown that he sometimes took part in the discussions of questions that came up, and that he made out the statement of the accounts by means of which the ultimate conclusion was reached. But it does not appear that the part he took in discussions was of such a character as was calculated to influence the decision of the arbitrators. All that appears is, that he sometimes took part in their discussions. He made up the account at the request of the arbitrators, and under their supervision, and they approved his work when done. The accounts seem to have been simple, and the arbitrators were no doubt selected more on account of their good sense and

sound judgment than their skill in the mere clerical work of putting down the items of debits and credits, and summing up the result ; and the fact that they employed their chosen umpire, who no doubt stood impartial between the parties, to do that work, furnishes no ground for setting aside the award.

2. The facts relied upon to sustain the second objection are, that the arbitrators charged the appellee with the whole of the salary and board of the only clerk employed by the firm. This, it is claimed, was not involved in the suit, and therefore was not submitted to the arbitrators. We cannot concur with the appellee in this. Whatever claim either asserted against the other as growing out of the partnership, whether well or ill-founded, was a matter in controversy in the suit, and embraced in the submission, although not mentioned in the petition.

3. It is claimed that because the arbitrators did not divide the notes and accounts found to remain uncollected, and because there are uncollected notes and accounts not reported by them, they did not settle all the questions submitted to their decision.

To ascertain how much the appellee had collected on notes and accounts outstanding at the death of Adams was one of the matters submitted. The balance could not be struck between the partners without ascertaining the amount of such collections. This we must presume was done.

The award directs how the $1,198.18 of notes and accounts found to be uncollected shall be disposed of between the partners, but it neither disposes of them by division, nor identifies them so that they may be distinguished from other notes and accounts shown by the pleadings filed and proof taken since the award to be also uncollected.

It is therefore clear that if it was the duty of the arbitrators to dispose of the uncollected notes and accounts between the partners, they have failed to dispose of all matters submitted to them, and their award was properly set aside. But we are of the opinion that the arbitrators had nothing to do with the uncollected assets. The object of the suit was to procure a settlement of all controversy growing out of the partnership. When an asset was collected, its proceeds passed into the hands of the surviving partner, and in order to ascertain the state of the accounts between the partners, it was necessary to ascertain how much he had collected. The amount of such collections was therefore a matter in controversy, to be decided by the arbitrators under the submission of "all matters involved in said suit." But the surviving partner was not chargeable with, or liable for, uncollected assets, and no effort was made in the petition or the award to charge him with them. They were, therefore, not matters in controversy, and not within the scope of the submission. If it be said that, these matters not being within the scope of the submission, the arbitrators transcended their authority, and therefore the award must be set aside, we answer that this part of it may be stricken out or disregarded, and the residue may be upheld and enforced. (Williams v. Davis, 2 J. J. Mar., 539.)

4. In order to show that the award is erroneous and unjust, the appellee alleges that numerous items of debits and credits made and given by the arbitrators are improper. These will be considered *seriatim*.

He alleges that Adams gave himself credit on the firm books for $364 to which he was not entitled, and that the books also show that Adams paid a debt of $251.56, which another firm of which he was a member owed to John A.

Dougherty, by giving Dougherty credit for that sum upon the books of the firm of Adams & Ringo.

The fact that these matters were entered on the firm books during the continuance of the partnership was, after the death of one of the partners, sufficient evidence to warrant the arbitrators in treating them as correct, and especially so, unless evidence was produced before them to show that these credits were incorrect, which does not appear to have been done.

It is next alleged that the arbitrators charged him with $311.88 as collected from John A. Dougherty, although there was before them plain evidence that Dougherty denies that he owes any such balance, and is suing him (appellee) as surviving partner for a large sum claimed against the firm.

It is not alleged that this sum was not in fact collected from Dougherty, and this is a sufficient answer to this allegation.

It is also alleged, that although he (appellee) shows uncollected debts due to the firm amounting to $2,410.74, the arbitrators only deducted from the gross assets $1,198.18. Although it is not anywhere alleged that the arbitrators charged him with more than he collected, this allegation may have been intended to so charge, and we will treat it in that light.

The arbitrators were to act upon the evidence before them, and it was the duty of each party, unless prevented by casualty or misfortune, or the action of the arbitrators, to bring before them all his evidence touching the several matters to be decided by them. The appellee does not say he produced uncollected debts to the amount of $2,410.74 to the arbitrators, or that there was not sufficient evidence

before them to authorize them to decide that he had actually collected the amount with which he was charged. All he says is, that he shows (*i. e.*, by his answer) that there are uncollected debts amounting to $2,410.76, instead of $1,198.18, the amount reported by the arbitrators.

It is further alleged that Mrs. Adams, who was the original administrator of the deceased partner, collected $857.59 due the firm, with which the arbitrators did not charge her in making up their award. But it is not alleged that knowledge or proof of this fact was brought before the arbitrators. Moreover, it appears from the evidence now in the record that the firm held a debt against two sisters of Mrs. Adams, and that the appellee collected as much on one of them as Mrs. Adams collected on the other; and it does not appear, by either allegation or proof, whether the amount collected by the appellee was charged to him. But if we assume that it was, the result must be the same. Mrs. Adams denies that she made any such collection, and while the evidence before the master shows that she did, she testifies that she did not, and there is nothing to show that on the evidence before the arbitrators they were not fully justified in deciding as they did.

It is complained that the arbitrators charged the appellee with interest for several years on sums charged to him, and failed to allow him interest on money paid out by him in discharge of firm debts.

It does not appear that he was charged with interest on anything more than the balance found in his hands; and as he must be presumed to have paid those debts out of money belonging to the firm, it does not appear that any injustice was done in charging him with interest.

He also complains that the arbitrators failed to allow him credit for all the firm debts paid by him, and that they failed. to allow credit for $1,500 paid in by him as capital stock;; but neither alleges nor proves. that he offered any evidence of the correctness of either of these claims.

These were all matters clearly within 'the scope of the submission, and there is no pretense that he did not have a full and fair hearing and opportunity to present every item now presented, and to offer whatever evidence he had to support them; and it is as true of hearings before arbitrators. as of trials in court, that it is the duty of each party to bring forward his whole case and the proofs to sustain it. Any other rule would render arbitrations worse than useless, and open a door by which the defeated party would generally be able to escape from the award by withholding a part of his case, and setting it up to show that the award was erroneous and unjust. Conceding for the present that a mere mistake of law or fact may authorize the chancellor to set an award aside, the question whether there was mistake or not must be determined from a view of the case as presented to the arbitrators, and not as it may appear upon a different presentation and different proofs in the suit to set it aside.

Tested by this principle, none of the items above adverted to under this head would authorize the interference of the court to set aside the award. It does not appear as to any one of them that the action of the arbitrators was even erroneous, if tested by the case as presented to them.

But as to two items, the record shows that the arbitrators: made a mistake of law in deciding the case as it was presented.

The firm employed but one clerk, and he seems to have been boarded by Adams and paid by the firm..

Adams' adm'r v. Ringo.

It appeared that Adams had given all his time to the business of the firm, and that the appellee had given but little attention to its business. There was no evidence of a contract between the partners that appellee should pay either the board or hire of the clerk. In the absence of such evidence, the hire of the clerk should have been paid by the firm. (Lee v. Lashbrook, 8 Dana, 214.)

Should the award have been set aside for this mistake?

Some elementary authorities, and two cases decided by this court, Callant v. Downey, 2 J. J. Mar., 348, and Burnam v. Burnam, 6 Bush, 392, and one English case, Ridout v. Pain, 3 Atkyns, 494, are cited to establish the proposition that an award may be set aside for mistake of law by the arbitrators.

The case in Atkyns was decided during the last century.

"The mode of settling controversies by arbitration has in modern times become a peculiar favorite of the law, and the ancient niceties and technicalities applied to it have given way to a more rational and liberal construction, with a view to encourage and sustain this mode of putting an end to litigation. Hence it is that many of the more ancient adjudications upon the subject are found not to be good authority." (Strockey v. Glassford, 6 Dana, 11.)

In Callant v. Downey this court incidentally, in the course of its opinion, says that an arbitration cannot be revised except it be shown that the arbitrators were guilty of fraud, or made a palpable mistake in the law or facts. But there was no discussion of the principle involved, and what the court said seems rather to have been intended as a concession to the party seeking relief, made with a view to show the utter absence of equity in his bill, than as the announcement of a recognized rule of law.

In Burnam v. Burnam the award was set aside because the time limited by the order of court had expired before the award was made.

Having set aside the award on that ground alone, and thus opened every question in the cause, the court said:

"Another objection to it (the award) may be noticed, as it may avoid further difficulty," and then proceeded to point out the mistake made by the arbitrators; but the award was not set aside because of the mistake, nor did the court decide that the award would have been set aside on that ground alone. What the court said on this point was intended for the guidance of the court below in the further progress of the case, and not as a reason for setting aside the award.

The statute of 1798 provided that no award should ever be set aside, unless it should be made to appear that such award was obtained by corruption, evident partiality, or other undue means.

The decisions in Baker v. Crockett, Hardin, 388; Ewing v. Beauchamp, 2 Bibb, 456; Lillard v. Casey, Ib., 459; Wigglesworth v. Morton, Ib., 160; and Ewing v. Beauchamp, 3 Bibb, 44, were all made while that statute was in force. The provision above referred to of the act of 1798 was omitted from the Revised Statutes, the corresponding section only providing that "no award shall be set aside for want of form, but courts of chancery shall have power over awards as heretofore;" and this section is continued in force in the General Statutes. (Sec. 6, ch. 4.)

It might be plausibly contended that the phrase "courts of chancery shall have power over awards as *heretofore*," was intended to restrict them as they had been restricted by the act of 1798. But waiving this, we think it clear that only such powers as courts of chancery might have exercised

independently of the act of 1798 can now be exercised by such courts without a violation of the statute.

In Baker v. Crockett it appeared on the face of the award that the arbitrators had made a mistake of law, and this, too, when the law relating to the very subject about which the arbitrators had been called to act had but recently been passed upon by this court.

In that case the court said:

"We are therefore of opinion that either, as at the common law or in equity, with or without the statute, this award cannot be set aside for *mistake* of law apparent in the body or face of the award."

In Ewing v. Beauchamp, 3 Bibb, 45, the court quoted and approved the language just quoted from the opinion in Baker v. Crockett.

Although these cases were decided while the statute was in force, the quotation *supra*, and much more that was said, applies as well now as it did then.

In Ewing v. Beauchamp, 2 Bibb, the court said: "The very object of submitting a cause to arbitration ought to prevent too easy an ear by the courts to overset awards. It is a mode of decision preferred by the parties, in which, from its nature, they agree to risk the event of the decision on the judgments and integrity of men of their own choosing." And again: "It would at once prostrate this mode of trial, by the consequent subjection to a suit in chancery, and instead of a *cheap* and *speedy* administration of justice, would produce precisely the reverse.

These authorities warrant us in holding that if arbitration is to continue to be one of the modes of settling litigation, a mere mistake of law, such as that made by the arbitrators in this case, furnishes no sufficient ground for setting aside

.an award.　We will not say that the decision of arbitrators might not be so in conflict with a plain principle of law which, from its nature, must be supposed to be well understood by all intelligent laymen as to furnish evidence of partiality and corruption.　But in that case we would set aside the award for corruption proved by the decision, and not because there was an honest mistake.

If arbitrators should decide that the children of a deceased person, admitted to have been born in lawful wedlock, were not his heirs, we should not hesitate to set aside their award. All reasonably intelligent men know that such is the law, and a decision that such children were not the heirs of the deceased parent would be satisfactory evidence of corruption.

But when arbitrators decide that if one partner gives his whole time to the business of the firm, and the other gives it none, or only a small part of his time, the latter shall pay the hire of a clerk, so as to make up for the loss of his own services, and thus equalize the partners, it would be going a great way to say that such decision furnishes evidence of partiality or corruption.

Mere mistakes of computation may no doubt be corrected, but mistakes in matters of judgment, whether upon questions of law or fact, which do not prove partiality or corruption, cannot be corrected.

Tested by these principles, there is no sufficient ground for setting aside the award; and the judgment is reversed, and cause remanded for judgment for the amount found by the arbitrators.

Adams' adm'r v. Ringo.

To a petition for rehearing—

CHIEF JUSTICE COFER DELIVERED THE FOLLOWING RESPONSE:

In his second amended petition the appellee said, "that if his said award is not and cannot be enforced herein (as) demanded, then he claims the right to, and does, amend, state, and aver that said defendant was indebted to the estate of John Adams in the further sum of $3,954," &c.

This was not a waiver of the award. The claim to set up and recover the larger amount claimed to be due was expressly made to depend upon his inability to enforce the award.

Nor was there any waiver in failing to object to a reference to the master, or in appearing before him without objection.

That the hire of Sanders was paid by the firm and entered on the firm books was not a settlement between the partners as to whether the appellee should pay his hire as an offset to the personal services of Adams for the firm.

The petition must be overruled.