CASE 54—PETITION ORDINARY—MAY 23.

# Allen-Bradley Co. v. Anderson & Nelson Distilleries Co.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. ARBITRATORS—WHEN THEY HAVE POWER TO SELECT AN UMPIRE.—Arbitrators have no inherent power, upon their disagreement, to select an umpire, unless they are authorized to do so by the terms of the submission; and an award made by an umpire so selected is void. Arbitrators derive their power from the articles or agreement of submission, and the umpire must derive his in the same way.

2. ARBITRATION—AWARD AS TO MATTERS NOT SUBMITTED.—When arbitrators make an award as to matters submitted to them, and attempt in the award to determine matters not submitted to them, the award will be enforced as to the matters submitted, and treated as void as to the others. But in this case the whole award being void, this rule has no application.

3. CONSTRUCTION OF DEED.—There being several distilleries in the same vicinity owned by the same man, and using the same pumping station for their water supply, a provision in the deeds of conveyance to separate persons of the several distilleries that "when the property should be operated for use, the cost of operation and the ordinary expenses of repairing incident thereto should be paid by the distilleries using the water from said pumphouse in proportion to the quantity of water used, determined by the number of bushels of grain crushed" means that each distillery is required to pay its share of the expenses of the pumping station only while using the water from the station, and, not when it procures its water supply elsewhere.

GRUBBS & MORANCY FOR APPELLANT.

No brief in the record.

HUMPHREY & DAVIE FOR APPELLEE.

No brief in the record.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The Newcomb-Buchanan Company formerly owned four distilleries in the city of Louisville. This company failed and the property went into the hands of its assignee.

By proper conveyances the appellant, Allen-Bradley Company, became the owner of one of the distilleries, and the appellee, Anderson-Nelson Company, became the owner of three of them.

To supply their distilleries with water for the purpose of manufacturing whisky the Newcomb-Buchanan Company procured some ground some distance from the distilleries, on which it had dug a large well, about which the necessary machinery was placed to force the water into the pipes leading to the distilleries.

By the deed which the assignee of Newcomb-Buchanan Company made to the purchasers of the distilleries he conveyed the pumping station, the deed defining the rights of the parties thereto, and the proportion of expenses each should pay for operating the station, for the ordinary expenses of repairing incident thereto and for reconstruction, etc.

There appears in the deed language as follows, to-wit:

"*First*, That when the property should be operated for use the cost of operation and the ordinary expenses of repairing incident thereto should be paid by the distilleries using the water from said pump-house in proportion to the quantity of water used, determined by the number of bushels of grain crushed as reported to the office of the collector of internal revenue of the United States."

For the distilling seasons of 1885-6 and 1886-7, the Anderson-Nelson Company paid the expenses of operating the pump-house. A controversy arose between the parties over

the expense account, particularly over the expense on account of operating the pump-house for the season of 1885-6.

. The pump-house seems to have been operated ninety-five days during the season of 1885-6. The operation of the pump-house appears to have ceased about June 1, 1886. Instead of using the water for ninety-five days the Allen-Bradley Company claimed it had only used water for forty odd days, and that it should not pay any part of the expenses in operating the pump-house except when it was receiving water from the well. After much correspondence between the companies the matters in controversy were submitted to the arbitrament of Gen. D. W. Lindsey, who was attorney for the Allen-Bradley Company, and Col. John Mason Brown, who was attorney for the Anderson-Nelson Company.

There was no formal submission, but the letters which passed between the companies seem to have formed the basis of the submission. Anderson-Nelson Company contends that nothing was submitted except the "outstanding accounts" between the parties. The Allen-Bradley Company contends that it was not only the "outstanding accounts" but the question as to the interpretation of the provisions of the deed under which the pump-house was acquired. It is insisted for it that Allen-Bradley Company disputed the account because of the charges for part of the expense of operating the pump-house when it did not receive the water, claiming that under the contract it could only be so charged with such expenses when it was receiving the water; that this dispute necessarily involved an interpretation of the contract, and that the interpretation given it on the award is binding on the parties in the settlement of all future accounts for operating the pump-house.

There was no agreement that the arbitrators should choose an umpire. Before they began the investigation the arbitrators selected Judge Alvin Duvall as umpire. The arbitrators could not agree upon an award, and, therefore, the *umpire made it.* It was not an award by those to whom the parties had submitted the questions in dispute. -

Arbitrators derive their powers from the submission. An umpire must derive his in the same way. Arbitrators have not the inherent power to select an umpire unless they are authorized to do so by the terms of the submission. When an umpire is thus selected and makes the award it is a nullity. It is the action of a person who has no authority to determine the matters in dispute. (Daniel v. Daniel, 6 Dana, 98; Morse on Arbitration and Award, 245.)

The court below, in so far as the award of the umpire attempted to determine the accounts for the season of 1885-6, upheld the award. When arbitrators make an award as to matters submitted to them it will be enforced; and if the award determines matters not submitted to them, the award as to questions submitted will be enforced, and the award as to the matters about which no question was submitted will be treated as void. (Adams v. Ringo, 79 Ky., 211; Eddy's ex'or v. Northup, 15 Ky. Law Rep., 434.)

The award stated the principle which should control in the settlement of the accounts for the distilling season of 1885-6 under the deeds, and also as to how they should be settled for future distilling seasons. The award is that "The expenses of operating the pump-house during any distilling season are to be paid by the parties in the proportion of the number of bushels of grain mashed by each during that distilling season, whether using the water or not, inasmuch as each party has the privilege and right to use the water."

The effect of the award is that should one of the distilleries run during a distilling season, or a part of one, and procure the water it needs for the purpose from any place other than the well, still it would be bound to pay the expense of operating the pump-house in the proportion of the number of bushels of grain mashed by each distillery during the distilling season.

The distilleries did not run during the season of 1887-8. They did during the seasons of 1888-9 and 1889-90, and Allen-Bradley Company paid the expenses of operating the pump-house during these seasons. The distillery seasons began in the falls of 1888 and 1889, and closed respectively in ——, 1889, and in June, 1890. Anderson-Nelson Company did not begin to take water from the well in the distillery season of 1888-9 until April 1, 1889, and the distillery season of 1889-90 until April 18, 1890, and continued from the dates named to take water from the well until the close of each season. Allen-Bradley Company used the water during the entire seasons.

This action is to recover of Anderson-Nelson Company its proportionate part of the expense for operating the pump-house during the distillery seasons of 1888-9, and 1889-90. The Allen-Bradley Company kept their account upon which it sues on the basis of the award, and seeks to compel the Anderson-Nelson Company to pay part of the expenses for operating the pump-house for several months in the distillery seasons of 1888-9 and 1889-90 when it was procuring at great expense its water elsewhere. If the award was void then neither is entitled to have it enforced.

The Allen-Bradley Company wants to enforce the entire award, while Anderson-Nelson Company wants it enforced in so far as it determined the accounts for the distilling sea-

sons of 1885-6, but disregarded wherein it claims that the
umpire went beyond and determined matters which were
not submitted to Brown and Lindsey for arbitration.   One
part of the award was just as void as another part of it.  The
entire award being void, the rule that an award is enforci-
ble so far as it determines the questions submitted and dis-
regarded wherein it determines matters not in the terms of
the submission, is not applicable.   That rule is applicable
when there has been a valid submission and the chosen ar-
bitrators have made an award.

In this case the arbitrators did not make an award, and
acts of the umpire were void, the question in dispute be-
tween the parties remained undetermined.   Under the
award made by the umpire Allen-Bradley Company would
be compelled to pay part of the expenses of operating the
pump-house in the seasons of 1885-6 when they were not get-
ting water from the well. It appears it did not get any water
from it in the months of April and May, 1886.   The judg-
ment of the court below sustains the award, wherein it has
the effect that we have just stated.

The court below also held that Anderson-Nelson Com-
pany was not liable for the expenses of operating the pump-
house when it was not receiving water therefrom.

The contention of the Anderson-Nelson Company that the
award in the particular mentioned should be enforced is
inconsistent with its claim that the award is void and obvi-
ously unreasonable and unjust.

The court below held that in making up the accounts be-
tween the two companies for the seasons of 1888-89 and 1889-
90, and in defining the proportion of expense of operating
to be paid by each company, the amount of water used by
each company should be arrived at by ascertaining the num-

ber of bushels of grain mashed as reported to the office of the collector of internal revenue of the United States from the time that the companies respectively commenced using the water until they ceased using it for the season.  In this the judgment is correct.

The same rule must be applied in making up the accounts and determining the water used by each company for the distilling seasons of 1885-6 and 1886-7.  For this purpose the case must be referred to the commissioner of the court.

The interpretation given the deed by the umpire in regard to the expense of operating the pump-house (and we are not to be understood as expressing an opinion as to the balance of it) is certainly not the proper one.  It certainly was not intended that the company not using the water from the well should pay any of the expenses of operation while the other company was alone using the water.  With the separate pump as now arranged it seems that no complication can arise in the future.

All questions not specifically passed upon by this opinion are undetermined by this court.

The judgment is reversed, with directions that further proceedings conform to this opinion.