CASE 71.—ACTION BY W. H. HERNDON'S ADM'R AGAINST THE LOUISVILLE & N. R. R. CO., FOR DAMAGES FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—Actober 10.

## Louisville & N. R. R. Co. v. Herndon's Admr.

Appeal from Hopkins Circiut Court.

J. F. GORDON, Circuit Judge.

Judgment for plaintiffs, defendant appeals.—Affirmed.

1. Master and Servant—Railroad—Death of Brakeman—Negligence—Rules.—Decedent, a brakeman in defendant's employ, was directed to assist in taking out cars from a siding, and while between two cars, standing six or eight feet apart, inspecting the coupling air hose, was killed by other cars being shoved against one of the standing cars with great

force, and without notice to decedent. Held, that defendant was negligent in permitting such operation, notwithstanding an unpublished rule or custom of the company that the switch engine had the right of way over all others in the yard, and that it was not the duty of those in charge of it to give notice of its movements to other crews in the yard, who were required to protect themselves.

2. Administrators—Public Administrator—Appointment—Corporations.—Under Stats. 1903, section 457, providing that the word "person" may extend and be applied to corporations, the court was authorized by section 3903, providing for the appointment of some discreet, fit person to act as public administrator, to appoint a corporation to that office, which was organized under section 606, providing that such corporations are authorized to act as guardian, executor or administrator.

3. Same—Right to Sue.—Where an action for death was brought by a corporation which had been appointed public adminis trator, and the petition, in addition, alleged that intestate died a resident of H. county, Ky., and that on a specified day plaintiff was appointed by the county court administrator of his estate, and thereupon qualified as such administrator as required by law, and had acted as such ever since, etc., such allegation sufficiently showed a special appointment of plaintiff as administrator of decedent's estate.

4. Same—Qualification.—An allegation that plaintiff had duly qualified as intestate's administrator raised a presumption that plaintiff had taken the necessary oath.

5. Pleading—Capacity to Sue—Demurrer.—Civ. Code Prac., section 92, provides that a special demurrer is an objection to a pleading which shows that the court has no jurisdiction of the defendant or of the subject of the action, or that plaintiff has no legal capacity to sue, and that such grounds of objection are waived unless specified by demurrer thereto, except the objection to the jurisdiction of the court over the subject of the action. Held, that a general demurrer to a petition by an administrator for wrongful death was insufficient to raise the objection that it had not sufficient capacity to sue.

6. Courts—Special Judges — Constitutional Provisions. — Const. section 136, declaring that the General Assembly shall provide by law for holding circuit court whenever for any cause the judge shall fail to attend, or cannot properly preside, authorizes the General Assembly to provide for a special judge in the case named, and does not limit its right to provide for special judges in other emergencies, and was therefore not violated by Acts 1906, p. 249, c. 23, amending

Louisville & N. R. R. Co. v. Herndon's Adm'r.

Ky. Stats., 1903, section 964, authorizing the holding of a special term in another county of a judicial district while a regular term was being held in a county of the same district.

7. Statutes—Expression of Subject in Title—Act Relating to Courts.—Acts 1906, p. 249, c. 23, is entitled an act to amend Ky. Stats., 1903, section 964, by adding thereto subsection "a," called section 964a. The added section authorizes a special term of court to be held in another county of a judicial dis-' trict when a regular term is being held within the district, and an additional section, designated as "subsection 2," declares that the regular judge shall have the right when engaged in holding any regular or special term of court in any county to cause an appointment of a special judge under the act to hold any regular or special term of the circuit courts then about to be holden in any other county in such judicial district. Held, that the whole amendment, including the subsection, applied to the same subject, and that the amendment was not therefore invalid, as containing matter not expressed in the title.

8. Same—Partial Invalidity.—Such subsection 2 (page 2522, even if invalid, as not within the title, is separable, and does not affect the validity of the first section of the amendment.

9. Judges—Appointment—De Facto Judge—Objections—Waiver. —Where a special term at which a case was tried was regularly called by the circuit judge, and no objection was made to the assignment of the case for trial at that term, and no exception was taken to the action of the court in trying the case, the judge who presided was at least a de facto officer, and defendant could not thereafter object to the validity of his appointment.

BENJAMIN D. WARFIELD for appellant.

WADDELL & DEMPSEY of counsel.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. The Kentucky Bank and Trust Co., a corporation, is not authorized by the laws of Kentucky to act as public administrator, in which capacity it is seeking to maintain this action. Art. 5, ch. 98, Ky. Stats., sections 3903-3908; this question was properly raised by appellant's general demurrers to the petition and amended petition. L. & N. R. Co. v. Brantley's Adm'r, 96 Ky., 297.

2. But even if the trust company might lawfully act as public administrator at all, it had no right so to act under the appoint-

ment, or pretended appointment, of July 1, 1901, for a longer period than four years thereafter, and was functus officio on Aug. 30, 1905, when it was attempted to refer decedent's estate to it for administration, and on September 4, 1905, when this action was commenced, and at all times since then. Section 107, Const. of Ky., section 3904, Ky. Stats.; Comrs. of Sinking Fund v. George, etc., 20 Ky. Law Rep., 938; Campbell v. Dodson, 23 Ky. Law Rep., 510; Commonwealth v. Smith, 14 Ky. Law Rep., 573; Offutt v. Commonwealth, 10 Bush, 212; Lord Arlington v. Merricke, 2 Wms. Saund., 403; Hassell v. Long, 2 Maule & S., 368; Commonwealth v. Fairfax, 4 Hen. & M., 208; Tyler v. Nelson, 14 Gratt., 214; Munford v. Rice, 6 Munf., 81; Williams v. Miller, Kirby (Conn.), 192; Cuthbert, Adm'r, v. Huggins et al., 21 Ala., 349; State ex rel. Polk v. Galusha, Secretary of State, 104 N. W., 197; Ky. Const., section 228; Ky. Stats., sections 3753, 3756, 457; Morgan v. Vance, 4 Bush, 323; Creighton v. Commonwealth, 83 Ky., 142; 23 A. & E. Eucyc. of Law, 415; State v. Brewster, 44 Ohio State —, 9 N. E. 849; Atchison, County Judge, v. Lucas, 83 Ky., 451.

3. While appellee alleges that he was appointed administrator of decedent's estate, the copy of order of the Hopkins county court, made part of petition, shows the estate was "confided" to appellee as "public administrator." It is well settled that where there is a variance between the allegations of the petition and the exhibit itself, as to what the exhibit contains, the exhibit controls. Boyd, etc., v. Bethel, 10 Ky. Law Rep., 470.

4. The trial court erred in admitting much incompetent testimony, particularly as to alleged customary rules observed by employes in the Guthrie yards, of which there is no pretense appellant had any knowledge, or that it consented thereto, and which so-called customary rules were in contravention of or not recognized by appellant's printed rules for the government of its transportation department. L. & N. R. Co. v. Scanlan, 22 Ky. Law Rep., 1404; Id. v. Logsdon, 114 Ky., 746; Labatt, Master and Servant, sections 35, 210, 211; James v. N. P. R. Co., 48 N. W., 783; A., T. & S. F. R. Co. v. Carruthers, 43 Pac., 230; Crowe v. N. ., C. & H. R. R. Co., 70 Hun., 37, 23 N. Y. Supp., 1100; Rutledge v. M. P. R. Co., 123 Mo.,131.

5 The court erred in permitting appellee to prove rule 130 of appellant's book of rules, as establishing the standard of legal care due to decedent by his co-employes, that being a higher degree of care than the law requires. Lake Shore, etc., R. Co. v. Smith, 173 U. S., on p. 679; L. & N. R. Co. v. Collins, 2 Duvall, 114; Id. v. Robinson, 4 Bush, 507; Greer v. L. & N. R. Co., 94 Ky., on

Louisville & N. R. R. Co. v. Herndon's Adm'r.

p. 178; Volz & Chesapeake, etc., R. Co., 95 Ky. 188; Cincinnati, etc., R. Co. v. Palmer, 98 Ky., on p. 389; Dana & Co. v. Blackburn, 28 Ky. Law Rep., 695

6. Whether or not it was safe for the switch engine to throw cars in on the track on which the cars about which decedent was working stood, was a question for the jury and not for opinion evidence of witnesses. L. & N. R. Co. v. Milliken's Arm'x, 21 Ky. Law Rep., on p. 492; L. & N. R. Co. v. Mulloy's Adm'v, 28 Ky. Law Rep., on p. 1119.

7. Appellee does not contend appellant was negligent except as to the switch crew. There was no evidence of negligence on the part of such crew, and the court erred in submitting that question to the jury to "guess away" appellant's rights. L. & N. R. Co. v. Wathen, 22 Ky. Law Rep., 85; Langhorn et al. v. Nelson, 99 S. W., 223; Louisville Gas Co. v. Kaufman-Straus Co., etc., 105 Ky., 131-156.

8. Instructions 1, 2 and 5 given by the court on its own motion were very erorneous and prejudicial, especially in submitting issues there was no evidence to support, and in authorizing punitive damages. Covington Saw Mill & Mfg. Co. v. Drexilius et al., 27 Ky. Law Rep., 903-7; Lexington Ry. Co. v. Fain, 25 Ky. Law Rep. 2243; McHenry Coal Co. v. Sneddon, 98 Ky. 686; Southern Ry. Co. in Ky. v. Hawkins, by etc., 28 Ky. Law Rep., 364. To the same effect, see Lake Shore, etc., R. Co. v. Prentice, 147 U. S., 107; Cooley on Torts, 3d Ed., p. 1324; Pollock on Torts, star page 157; Mcak's Underhill on Torts Reduced to Rules, 74; Jaggard on Torts, 392; Suthërland on Damages, 3d Ed., 1080; Hutchinson's new work on Carriers, 3d Ed., section 1436; Rorer on Railroads, 869; Ray's Neg. of Imposed Duties, pp. 358, 966; Thompson on Neg., sections 7080-1; Sedgwick on Dam., vol. 1, p. 217n; Shearman & Redfield on Neg., vol. 2, section 748; Thomas' Negligence Rules, Decisions, Opinions, 898-9; Watson's Damages for Personal Injuries, sections 719, 722; 12 A. & E. Encyc. of Law, 2d Ed., 28; 13 Cyc., 105; L. & N. R. Co. v. Kingman, 18 Ky. Law Rep., 83; Southern Ry. Co. in Ky. v. Goddard, 28 Ky. Law Rep., 523; I. C. R. Co. v. Lence, decided February 27, 1907; Louisville & Portland R. Co. v Smith, 2 Duvall, 556; Kentucky Central R. Co. v. Dills, 4 Bush, 593; L. & N. R. Co. v. Sickings, 5 Bush, on p. 10; C. & C. Bridge Co. v. Lillard, 29 Ky. Law Rep., 871.

JONSON & JENNINGS, attorneys for appellee.

Louisville & N. R. R. Co. v. Herndon's Adm'r.

## POINTS DISCUSSED AND AUTHORITIES CITED.

1. Duty of appellant to keep. lookout for deceased. L. & N. v. Lowe, 66 S. W. 736, 80 S. W. 880, 25 Ky. Law Rep. 2317; C., N. O. & T. P. R. F. Co. v. Hill's Adm'r, 89 S. W. 523, 25 Ky. Law Rep. 530.

2. Duty to give signal. So. Ry. v. Otis' Adm'r, 78 S. W. 480, 25 Ky. Law Rep., 1686.

3. Contributory Negligence. So. Ry. v. Otis' Adm'r, supra.

4. Appellant cannot escape liability by showing observance of negligent custom.

5. Admission of evidence. (a) No error in admitting printed rules. (b) No error in admitting so-called customary rules. Ky. Cent. Ry. v. Carr, 43 S. W. 193, 19 Ky. Law Rep. 1172. (c) No error in admitting rule No. 130. (d) Evidence of Gioninni that it was dangerous for the switch crew to throw cars against those between which Herndon was.

6. Fellow Servant. L. & N. v. Lowe, supra; C., N. O. & T. P. R. R. v. Hill's Adm'r, supra.

7. Switch crew did not have right of way or right to kill Herndon if it did have right of way.

8. Peremptory Instruction was properly refused. Labatt M. & S., section 35; So. Ry. v. Otis' Adm'r, supra.

9. Instructions. Judd's Adm'r v. C. & O. Ry., 37 S. W. 842, 38 S. W. 880, 18 Ky. Law Rep. 747.

(a) Gross negligence instruction. Const., section 241; Ky. Stats., section 6; Link's Adm'r v. L. & N., 54 S. W. 184, 21 Ky. Law Rep. 1097; I. C. R. R. v. Coleman, 59 S. W. 13, 22 Ky. Law Rep. 878; C., N. O. & T. P. R. R. v. Cook's Adm'r, supra; So. Ry. v. Otis' Adm'r, supra; Burton v. I. C. R. R., 79 S. W. 231, 25 Ky. Law Rep. 1916; Ky. Cent. Ry. v. Carr, supra.

10. A corporation can be appointed public administrator. 7 Am. & Eng. Encyc. of Law, 733; 11 Id. 753 and n; Johnson v. Johnson, 88 Ky. 275, 11 S. W. 5; Coleman's Adm'r v. Parrott, 13 S. W. 525, 11 Ky. Law Rep. 947; Phalan v. Lou. Safety V. Co., 88 Ky. 24, 10 S. W. 10; Ky. Stats., sections 606, 611, 3904, 3903, etc.; Thompson Corporations, sections 11 and 5689.

11. Appellee held over as public administrator. Harrison v. State, 113 Ind., 434; State v. Compson, 34 Ore., 25; State v. Catlin, 84 Tex., 48; Com'rs Sinking Fund v. George, etc., 47 S. W. 779, 20 Ky. Law Rep. 938; Olsen's Adm'r v. Rice, 79 Ky., 244; Ky. Stats., sections 611 and 3904.

12. Appellee was at least a de facto administrator of decedent,

and its acts as such were binding. Ky. Stats., section 611; Davis v. Connelly's Ex'rs., 4 B. M., 140.

13. General demurrer not proper practice to question appellee's capacity to maintain action. Coleman's Adm'r v. Parortt, supra.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee's intestate was killed while in the employ of appellant as brakeman, and at work in its yards at Guthrie, Ky., February 9, 1905. The evidence shows, without contradiction, that when killed he was between two cars, standing six or eight feet apart, and was inspecting the coupling apparatus or adjusting the brake knuckle lock. This was in his line of duty as shown by oral evidence, and rules number 130 and 224 of appellant prescribing the duties of a brakeman and other employes. Rule number 224 reads as follows: "Rule 224. All employes are hereby instructed, each for himself, to examine so as to know the kind and condition of the draw-heads, drawbars, and coupling apparatus, and are prohibited from placing in a train a car with defective coupling until they have first reported its defective condition to the yard master, conductor, or proper person in authority. Sufficient time is allowed and must be taken by employes in all cases to make examinations." Rule 130 reads as follows: "Rule 130. Employes of every grade are warned to see for themselves, before handling or using them, that the cars, machinery and tools, which they are expected to handle or use, and the premises upon which they are expected to work, are in proper condition for the service required, and if not, to put them in proper condition, or see that they are so put before using them." The deceased was directed by the yardmaster at Guthrie to take the engine and crew and take out some freight cars that

were situated on the north end of track No. 4 in the switchyard, and when killed was there in the performance of this duty. The switching crew with engine located at Guthrie yards, about 8 o'clock in the evening, moved south on track No. 3 or 5, either of which is about six feet from track No. 4; and while deceased, with his crew, were making up their train on track 4, kicked onto track 4, at the south end of the switchyard, two cars, and in a few moments afterwards either kicked or pushed three or five cars onto track 4. They stated that they set the brakes on one or two of these cars on the north end of them. There is no pretense that there was any notice or warning of any kind given to the crew, or any member of the crew, with which deceased was engaged, that the switch crew intended to place these cars into the south end of track No. 4. From the evidence this track was slightly downgrade to the north, and it is pretty certain, from the evidence, that these cars rolled or were shoved down track No. 4 and struck the cars standing thereon, which deceased's crew were preparing to take out, caught deceased between the cars, and crushed him.

The engineer under whom deceased was laboring testified that, after he backed onto track No. 4 and reached the cars that he was to pull out, he never moved his engine either backward or forward to the time that Herndon was killed; that he was in his cab with his head out of the window, looking back for signals, and saw some one with a lantern going in between the cars as though he was examining the couplings and adjusting the air hose. He could not tell at the time who this person was, for it was dark, but it turned out to be Herndon. He further stated that deceased went into the place where he was killed

and remained from one to two minutes, when. without any notice or warning to him, the cars were shoved or rolled with such force as to shove his engine six or eight feet; that he checked it with the emergency brakes.   The conductor testified that the deceased was performing his duty; that he passed along, examining the train and seals on the cars, and had passed deceased about a car length when the crash came; that he immediately returned, found deceased lying upon the ground under the cars, and on pulling him out he asked how it occurred.   He could hardly speak, but he thought he understood him to say that he was fastening the air hose.   He was carried to the hospital after he was injured.   The physician who attended him and one other witness testified, for appellant, that the deceased told them that he was adjusting the knuckle lock when he was caught.   One or two witnesses testified that on the next morning they found, at the place where deceased was injured, a piece of a knuckle lock, or pin, which had been broken, a part of the break appearing old and part new.   All the witnesses who testified on the subject stated that it was necessary to remove this broken piece, which could have been done by deceased in two or three minutes, and the remaining part of the pin would have performed the service required of it.   Appellant introduced several witnesses who testified that, by custom or some private or unpublished rule of the company, the switch engines had the right of way over all others in the yards at Guthrie, and that it was not the duty of those in charge of it to give any notice or warning of its movements to other crews laboring in the yards; that such crews had to take the necessary steps to protect themselves from injury. Appellee's proof contradicted this.   Even admitting

that such rule or custom existed, it should not be upheld, at least to the extent that it absolves the switch crew from giving notice or warning when about to kick or push cars against standing cars that another crew is preparing to take out. This switch engine passed by these standing cars a few minutes before the injury, and must have seen this engine and crew on track No. 4 preparing to take out these cars. The switch crew all testified that they knew the rules of the company required the brakeman in such case to go between the cars, examine the couplings, and attach the air hose, that this duty could not be done without going between the cars. The custom would be inhuman that would allow a switching crew, without notice or warning, to shove or kick other cars against such standing cars. In the case of Southern Ry. in Kentucky v. Otis' Adm'r, 78 S. W. 480, 25 Ky. Law Rep. 1686, this court said: "There were some dead cars, on what is known as the 'long siding' coupled together, but the air connections had not been made. Conductor Clifford directed Otis to make these connections, and, while Otis was performing this work, those in charge of the Hampton train had uncoupled it, and backed a portion of that train in on this long siding and struck these dead cars, between which Otis was situated, knocked him down, and the wheels passed over his head, killing him instantly. The proof shows that those in charge of the Hampton train did not give any warning signal, either by blowing the whistle or ringing the bell, of the intention of backing the train. The deceased was in a position between the cars where he could not see the train backing. * * * Under the proof in this case, it was negligence on the part of those in charge of the Hampton train to back in on this siding without giv-

ing any warning thereof by blowing the whistle or ringing the bell." In our opinion the evidence in this case shows gross negligence on the part of those in charge of the switch engine. It shows a reckless disregard on their part for the rights and lives of deceased, and those engaged with him.

The instructions of the court are in the usual form in such cases, and contain no error, at least none prejudicial to the rights of appellant.

Appellant insists that the Kentucky Bank & Trust Company, a corporation, is not authorized by the laws of this State to act as public administrator, in which capacity it brought this action, and contends that, as this fact appears on the face of the petition, this question was properly made and saved by its general demurrer to the petition, and also that, even if it had the right to act as public administrator, it was appointed, according to the exhibit filed with the petition, July 1, 1901, and this action was instituted September 4, 1905, more than four years after the appellee became public administrator, and its term of office had expired long before the action was brought. It appears from the petition, and is not controverted, that appellee was duly organized under the statutes of 1903 of Kentucky. By section 606 of the statutes it is provided that it may be appointed and act as guardian, executor, or administrator; and, by section 611, its capital stock shall be taken and considered as the only security required for the faithful performance of its duties, and no other security shall be required, unless the court or officer in or before whom the bond is executed, or some party in interest, demand it. Under these sections of the statutes, it is clear that it can receive specific appointments as guardian, executor, or administrator, and

in our opinion there is no reason why it could not be appointed as public administrator. It is true that the statutes (section 3903) say the court shall appoint some discreet, fit person to act as administrator, etc. In Thompson on Corporations, sections 11, 5689, the word "person" is construed as including a corporation, and by section 457 of the Kentucky Statutes of 1903, it is expressly provided that the word "person" may extend and be applied to corporations. Under these authorities, the county court had the right to appoint appellee as public administrator. Appellee in its petition, in addition to setting up its power to act under this appointment as public administrator, made the following allegations: "It says that on February 9, 1905, Wm. H. Herndon died intestate, a resident of Hopkins county, Ky., and on August 30, 1905, it was appointed by said Hopkins county court administrator of his estate, and thereupon qualified as such administrator as required by law, and has acted as such ever since, all of which is shown by the order of said court entered in its Order Book No. 25, p. 8, and a copy of which is filed herewith as part hereof marked 'B.' " Even conceding that appellee's power to act under this appointment as public administrator was not valid, these allegations show a special appointment of it as administrator of this particular estate; but appellant says that the order of appointment does not show that any officer of appellee took the oath required by the statutes. The petition alleged that it qualified as such administrator, and the presumption of law is that the court required it to duly qualify, unless there was something in the order which negatived that fact. We are of opinion that the allegations of the petition show a prima facie right in appellee to prosecute this

action. Appellant did not controvert in its answer, these allegations, nor allege any fact showing its incapacity to maintain this action. It has contented itself by filing a general demurrer to the petition, which, in our opinion, was not the proper method to reach the question. Section 92, Civ. Code Prac., provides: "A special demurrer is an objection to a pleading which shows, first, that the court has no jurisdiction of the defendant or of the subject of the action; or, second, that the plaintiff has not legal capacity to sue. * * * Either of said grounds of objection, shown to exist by a pleading, is waived, unless distinctly specified by a demurrer thereto, except the objection to the jurisdiction of the court of the subject of the action, which objection is not waived by failing to make it." Appellant, having failed to file this special demurrer, and also having failed to make a plea in its answer showing the incapacity of appellee to maintain this action, waived its right to now present this question. See the case of Warfield v. Gardner's Adm'r, 79 Ky. 583, 3 Ky. Law Rep 423.

Appellant claims that the opinion in the case of L. & N. R. R. Co. v. Brantley's Adm'r, 96 Ky. 297, 16 Ky. Law Rep. 691, 28 S. W. 477, 49 Am. St. Rep. 291, changed this rule. If so it undertook to change a plain provision of the Code, but we do not understand the opinion that way. In that case the petition showed on its face that the deceased was a resident of Indiana when he was killed, and appellee, his administrator, was also a resident of Indiana and appointed as such administrator by a court of Indiana; and in that case the court said that a non-resident appointed as administrator by a foreign state could not maintain an action in this State, unless authorized by statute,

and no such authority was given by our statute—unlike the case at bar, for in this case appellee was a resident of this State, and the estate of deceased was by express order of the county court referred to it for settlement.

Appellant further contends that the judgment in this case is void for the reason that it was rendered at a special term of the Hopkins circuit court, when a regular term of the court, as fixed by statute, was being held in Caldwell county, Ky.; both counties being in the same judicial district. Appellant's counsel claims that the act to amend section 964 of the Kentucky Statutes of 1903 (chapter 23, p. 249, Acts 1906), authorizing a special term to be held in another county of the judicial district, is unconstitutional and void. We are of the opinion that the amendment is not unconstitutional. Section 131 of the Constitution provides: ''There shall be at least three regular terms of circuit court held in each county every year.'' This section requires the General Assembly to provide for not less than three terms of circuit court a year in any county; but it does not prevent it from providing for more than three terms. This act authorizing a special term in effect provides for another term of the court in the county when it is called, and does not conflict with section 135, which provides: ''No court save those provided for in this Constitution shall be established.'' Section 136 of the Constitution says: ''That the General Assembly shall provide by law for holding circuit court whenever for any cause the judge shall fail to attend, or if in attendance can not properly preside.'' This section is a command to the General Assembly to make provisions for a special judge in the cases named; and does not have the effect to limit the right

of the General Assembly to provide for special judges in other emergencies. It has the power to enact any law that is not prohibited by the Constitution of the State. It is further claimed that this amendment is violative of section 51 of the Constitution, in that the enacting part provides that section 964 of the statutes shall be amended by adding a specific clause indicated as 964a; that to this amendment there is added an additional subsection 2, which is not embraced either in the title or in the enacting provision. It is conceded by counsel that it does not violate the Constitution to amend a section of the statutes by simply referring to it in the title of the act; but they claim that this subsection is not referred to in the title, and that it makes the law amended void; that the two sections are interdependent, and it cannot be presumed that the legislature would have passed the amendment without clause 2. We are of the opinion that appellant's counsel is mistaken in this. The whole amendment, including the subsection, applies to the same subject, special terms of circuit courts, and special judges when the docket in any court is so congested that the cases cannot be tried at the regular term of the court. But conceding their criticism, with reference to subsection 2, to be correct, and that section to be void for the reasons claimed, the first section of the amendment is not void, and in effect answers the purpose of the amendment. It provides: "In every such case (that is, in case of a congested docket) it shall be lawful for the regular judge of such court, by order entered of record, at a regular term of such court, to call a special term of said court to be held while a court is, or may be, in session in some other county in the district." There are other provisions of the statutes, aside from subsection 2,

requiring the Governor of the State, upon application, to appoint judges to hold the terms of court. Conceding that the amendment of 1906 is unconstitutional, it does not follow that the judgment in this case is void. This special term was regularly called by the circuit judge. There was no objection made to the assignment for trial of this case at the special term, nor was there any objection or exception to the action of the court in trying the case. As the record appears, appellant must be deemed to have consented to the trial; and the trial was regular in every respect, and the judge who presided must be considered, at least, as a de facto officer, and his acts are binding upon the rights of the public and third persons as if he was the officer regularly elected and qualified for the office and in full possession of it. See the case of Orme v. Commonwealth, 55 S. W. 195, 21 Ky. Law Rep. 1412. In the case of Paducah Land, etc., Co. v. Cochran's Assignees, etc., 37 S. W. 67 18 Ky. Law Rep. 465, it was decided that a special judge of a circuit court could regularly sit and try cases notwithstanding a regular term of the court was being held and presided over by a regular judge. According to this the amendment of 1906 was unnecessary.

For these reasons, the judgment of the lower court is affirmed.

The CHIEF JUSTICE does not concur in so much of this opinion as holds that the Legislature was in its discretion allowed to provide as appointive judiciary in lieu in part of an elective judiciary, except for the express occasions stated in the Constitution.