## Commonwealth v. Goldburg.

(Decided November 30, 1915.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. Statutes—Construction of—Substitution of Words.—Where the Legislature inadvertently used the word "magistrate" in place of the word "court," this court may, under well settled rules of statutory construction, substitute the word court for the word magistrate.

2. Statutes—Constitutional Law—Statute Unconstitutional in Part. —Where there are a number of severable sections in a statute, one of which is unconstitutional, a person proceeded against under the statute cannot avail himself of the invalidity of this section when the proceeding against him is based on other valid sections. No person can complain that a part of a statute is unconstitutional unless it is sought to impose upon him some liability under authority of that part averred to be invalid.

3. Statutes—Constitutional Law—When Invalid Section of Statute May Be Stricken Out.—When there are distinct and separate provisions in an act, one of which is unconstitutional, this invalid section may be stricken out unless it is so related to or connected with the other sections as that it cannot be eliminated and leave a complete act in such form as will accomplish the purpose of the legislation.

4. Constitutional Law—Acts Not to Take Effect on Other Authority Than That of General Assembly.—Under section 60 of the Constitution, providing that no other laws than those therein mentioned shall take effect upon the approval of any other authority than that of the General Assembly, a statute making it an offense to sell or use branded property is not in violation of this section.

5. Constitutional Law—Act Not to Take Effect on Other Authority Than That of General Assembly.—Statutes that become effective only when certain described conditions arise are not in the meaning of the Constitution dependent upon the approval of any other authority than that of the General Assembly. They merely lie dormant until called into active force by the existence of the conditions under which they were intended to operate.

6. Constitutional Law—Limitation on Power of Court to Declare Statute Invalid.—Laws cannot be disregarded merely because they are supposed to be repugnant to some governmental principles that lie outside of constitutional limitations. When the validity of legislation is challenged in the courts, the inquiry is limited to the questions, what provision of the Constitution does it violate? What does it do or propose to do that the Constitution forbids?

7. Constitutional Law—Class Legislation.—A statute making it a penalty to use or traffic in branded bottles or containers, and giving the owners of these bottles and containers special proceedings to protect them against loss, is not objectionable class legislation.

8. Constitutional Law—Class Legislation.—It is competent for the Legislature to create classes and deal with these classes both with respect to civil and criminal liabilities separately, the only limitation being that the classification must not be arbitrary and must rest upon some reasonable difference existing between the class selected for treatment and other classes of persons and property.

9. Constitutional Law—Class Legislation—Protection of Private Interest.—A statute is not objectionable on the ground that it is unreasonable class legislation merely because it affords protection to private rights, if it also affords protection to the public.

JAMES GARNETT, Attorney General; JOSEPH M. HUFFAKER, LORAINE MIX and BARRET, ALLEN & ATTKISSON for appellant.

ARTHUR H. MANN and KOHN, BINGHAM, SLOSS & SPINDLE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Goldburg, was indicted by the grand jury of Jefferson county for the offense of "unlawfully and wilfully buying, taking, trafficking in and filling with milk or cream, bottles marked and distinguished with and by a name, mark and device of another of which a description had been filed and published as provided by law, without the consent of the corporation whose mark and device was upon said bottles so used and trafficked in and filled by said defendant, and without said defendant having purchased from said corporation said bottles exclusive of contents."

The indictment set out that the Gray-Avon Allmen Sanitary Milk Company, a corporation organized under the laws of Kentucky, engaged in bottling and selling milk and cream, had, pursuant to the provisions of the Kentucky Statutes, recorded the marks, devices and brands blown and produced on the bottles used by it in the sale of its milk and cream, and that Goldburg, without its consent and without purchasing the bottles exclusive of their contents from the corporation, "did unlawfully and wilfully use, buy, take, traffic in and fill with milk or cream, a number of pint bottles, all and each of which said bottles were then and there marked and distinguished with and by the name, mark and device of said corporation, selected, filed, printed and published as aforesaid for pint bottles."

The lower court sustained a general demurrer to the indictment, and the Commonwealth appeals.

The indictment was found under sections 1279 and 1279a of the Kentucky Statutes. Sub-section 1 of section 1279 provides that: "Any and all persons and corporations engaged in manufacturing, bottling or selling soda waters, mineral or aerated waters, porter, ale, beer, cider, ginger ale, milk, cream, small beer, lager beer, weiss beer, white beer or other beverages or medicines, medical preparations, perfumery, oils, compounds, or mixtures in bottles, siphons, tins or kegs, with his, her, its or their name or names, or other marks or devices branded, stamped, engraved, or etched, blown, impressed, or otherwise produced on such bottles, siphons, tins or kegs, or the boxes used by him, her, it or them, may file in the office of the clerk of the county in which his, her, its or their principal place of business is situated, or if such person, or persons, corporation or corporations shall manufacture a bottle out of this State then in any county in this State, and also in the office of the Secretary of State, a description of the name or names, marks or devices so used by him, her, it or them, respectively, and cause such description to be printed once in each week for three weeks successively, in a newspaper published in the county in which said notice may have been filed as aforesaid."

Section 1279a, sub-section 2, makes it unlawful for any person or corporation to fill with the liquids or substances described in section 1279 any bottle, box, siphon, tin, or keg marked or distinguished as set out in section 1279; or to deface, erase, obliterate, cover up or otherwise remove or conceal the mark or device, or to buy, sell or traffic in the same, "without the written consent of, or unless the same shall have been purchased by such person or corporation, exclusive of the contents thereof, from the person or persons, corporation or corporations, whose mark or device shall be or shall have been in or upon the bottle, box, siphon, tin or keg so filled, trafficked in, used or handled as aforesaid."

It also provides that "Any person or persons, or corporation or corporations, offending against the provisions of this section shall be deemed guilty of a misdemeanor, and shall be punished for the first offense by imprisonment not less than ten days nor more than one year, or by a fine of fifty cents for each and every such bottle, box, siphon, tin or keg so filled, sold, used, disposed of, given, taken, bought or trafficked in, or by both

such fine and imprisonment, and for each subsequent offense by imprisonment, not less than twenty days nor more than one year, or by fine of not less than one dollar, nor more than five dollars, for each and every bottle, box, siphon, tin or keg so filled, sold, used, disposed of, given, taken, bought or trafficked in, or by both such fine and imprisonment, in the discretion of the magistrate before whom the offense shall be tried.''

Sub-section 3 provides that ''The use by any person other than the person or persons, corporation or corporations, whose device, name or mark shall be, or shall have been, upon the same, without such written consent or purchase as aforesaid, of any such marked or distinguished bottle, box, siphon, tin or keg, * * * is hereby declared to be presumptive evidence of the said unlawful use, purchase and traffic in of such bottles, boxes, siphons, tins or kegs.''

Sub-section 4 provides that ''Whenever any person, persons, or corporation, who shall have so filed and published as aforesaid, or his, her, its, or their agent shall make oath before any magistrate that he, she or it has reason to believe, and does believe, that any of his, her, its or their bottles, boxes, siphons, tins or kegs, a description of the names, marks or devices whereon has been filed and published as aforesaid, are being unlawfully used or filled, * * * the said magistrate must thereupon issue a search warrant to discover and obtain the same, and may also cause to be brought before him the person in whose possession the bottles, boxes, siphons, tins or kegs may be found, and shall then inquire into the circumstances of such possession, and if such magistrate finds that such person has been guilty of a violation of this section, he must impose the punishment herein prescribed, and he shall also award possession of the property taken upon such warrant to the owner thereof.''

On behalf of the appellee it is sought to sustain the judgment appealed from upon several grounds: (1) because the act has no relation whatever to the public health and safety or welfare, does not come within the police power of the State, and the Legislature was without power to pass it; (2) because it is unconstitutional on account of its arbitrary and unreasonable classification, and constitutes a denial of equal protection of the laws by giving to owners of a certain class of personal property rights and remedies denied to the owners of other classes

of personal property; (3) because the provisions in respect to search warrants violate the State and Federal Constitutions; (4) because it violates the Constitution of Kentucky as well as the statutes thereof in conferring upon magistrates' courts jurisdiction of a final trial, for the reason that the punishment exceeds the jurisdiction conferred upon magistrates' courts.

The argument for the Commonwealth challenges the correctness of each of these assigned reasons why the judgment appealed from should be sustained, and is an insistence that the statute in all of its parts is constitutional.

But before coming to an expression of our views upon the questions presented, it might be here noticed that the Supreme Court of Illinois in the case of Lippman v. People, 175 Ill., 101, 51 N. E., 872; Horwich v. Walker, Gordon Laboratory Co., 205 Ill., 497, 68 N. E., 938, and the Supreme Court of Ohio in State v. Schmuck, 77 Ohio State, 438, 83 N. E., 797, held acts substantially like the one here in question to be unconstitutional upon the grounds relied on by counsel for appellee.

On the other hand, the Massachusetts court in Com. v. Anselvich, 186 Mass., 376; 71 N. E., 790, and the New York court in People v. Cannon, 139 N. Y., 32, 34 N. E., 759, upheld the validity of legislation of this character.

In view of this conflict of opinion by courts of such high authority, it may well be said at the outset that the questions at issue are ones about which there are good grounds for reasonable difference of opinion; but having reached the conclusion that the legislation is not open to the objections urged against it, we will now proceed to state the reasons that have influenced us in coming to this decision.

It will be observed that the statute provides that any person offending against its provisions shall be guilty of a misdemeanor and punished in the manner set out in the statute, and that following the words of the statute making the offense a misdemeanor and prescribing the penalty, it is provided that the measure of punishment imposed within the limitations of the statute shall be "in the discretion of the magistrate before whom the offense shall be tried." We do not, however, regard the use of the word "magistrate" in this connection, or at other places in the statute, as denying jurisdiction of offenses against this statute to the circuit courts of the State or

as interfering with the general course of the criminal law, that offenses, where punishment of this character is imposed, may be prosecuted by indictment in the circuit court. We do not think the legislature in the use of the word "magistrate" intended to deprive circuit courts of their unquestioned jurisdiction to hear and determine cases where this measure of punishment may be imposed under indictments found in the circuit court. The Legislature, of course, knew that circuit courts, under the general law of the State, had jurisdiction of all cases in which the jurisdiction was not expressly confided to other inferior courts. It may also be assumed that the Legislature knew that under section 13 of the criminal code then in force, magistrates—using this word as defined in section 26 of the criminal code to mean "judges of the county courts, judges of city or police courts, mayors, chairmen of the trustees of towns, and justices of the peace"—had exclusive jurisdiction only "of prosecutions for offenses the punishment of which is limited to a fine not exceeding ten dollars and concurrent jurisdiction with the circuit court in prosecutions for offenses the punishment of which is limited to a fine not exceeding one hundred dollars or imprisonment not exceeding fifty days, or both such fine and imprisonment."

With this knowledge of then existing laws that conformed to the constitution it seems clear that the Legislature did not mean to enact an unconstitutional statute or intend without any reason therefor to give magistrates exclusive jurisdiction in cases arising under this act. We therefore conclude that the word "magistrate" in this section was inadvertently used, and, this being so, under well-settled rules of statutory construction we may, with much propriety, substitute the word "court" for the word "magistrate," and thus reading the section fixing the penalties, the circuit court in which the indictment was found had complete jurisdiction of the offense: Manion v. Lambert, 10 Bush, 295; Bird v. Board of Commissioners, 95 Ky., 195; Com. v. Grinstead & Tinsley, 108 Ky., 59; Com. v. Herald Publishing Co., 128 Ky., 424; James, Auditor v. United States F. & G. Co., 133 Ky., 299; Singleton v. Com., 164 Ky., 243.

This construction disposes of the objection to the constitutionality of the statute rested on the ground that it attempted to confer on magistrates a jurisdiction in violation of section 142 of the Constitution and in ex-

cess of the general law regulating the jurisdiction of magistrates.

We may, also, without expressing an opinion as to the soundness of the objection raised to that part of the statute providing for search warrants, put this objection to one side upon the ground that even though it should be assumed that this provision was unconstitutional, the appellee cannot avail himself of its invalidity, because no effort was made to proceed against him or search his premises or property under or by authority of this section of the act.

The appellee, so far as this record shows, was proceeded against in the first instance by an indictment. No search warrant was applied for or obtained, and it is well settled that no person can complain that any part of a general statute is unconstitutional unless it is sought to impose upon him some liability under the authority of that part of the statute averred to be unconstitutional. If a search warrant had been applied for and under the search warrant an effort had been made to search the premises or property of the appellee, he would be directly affected by this provision of the statute and could question its validity; but as the statute is severable and that part of it under which he is proceeded against is not open to any constitutional objection, he cannot shield himself behind the defense that other parts of the statute violate either the State or Federal Constitution, or both: Stevens v. Stevens, 4 T. B. Mon., 524; Marshall v. Donovan, 10 Bush, 681; Com. v. Wright, 79 Ky., 22; Sullivan v. Berry, 83 Ky., 198; Norman v. Boaz, 85 Ky., 557; Burnside v. Lincoln County Court, 86 Ky., 423; State v. McNulty, 7 N. D., 169; State v. Snow, 3 R. I., 64; State v. Potterfield, 47 S. C., 75; Tyler v. Registration Court Judges, 179 U. S., 405, 45 L. Ed., 252; Turpin v. Lemon, 187 U. S., 51, 47 L. Ed., 70.

There is another view of this question that effectually disposes of the objection urged by counsel for appellants to the validity of that section of the statute providing for search warrants. This section is a distinct and separate provision in the act. It is not so related to or connected with the other sections as that it may not be eliminated and leave a complete act in such form as will accomplish the chief purpose of the legislation. This being so, if the section of the act relating to search warrants were declared to be unconstitutional, the remainder of the act

and that part of it under which this indictment was found would remain unaffected by the invalidity of the search warrant section. Consequently its invalidity would not interfere with the proceeding under the indictment; Rogers v. Jacob, 88 Ky., 502; McArthur v. Nelson, 81 Ky., 67; Gayle v. Owen Co. Court, 83 Ky., 61; Duke v. O'Bryan, 100 Ky., 710; L. & N. R. R. Co. v. Herndon, 126 Ky., 589; Smedley v. Com., 138 Ky., 1; Allen v. Louisiana, 103 U. S., 80, 26 L. Ed., 318; Poindexter v. Greenhough, 114 U. S., 270, 29 L. Ed., 185; Pollock v. Farmers' Loan & Trust Co., 158 U. S., 601, 39 L. Ed., 1108.

The next objection to the act as pointed out by counsel for appellee is that it violates section 60 of the State Constitution providing in part that "No law except such as relates to the sale, loan or gift of vinous, spirituous or malt liquors, bridges, turnpikes or other public roads, public buildings or improvements, fencing, running at large of stock, matters pertaining to common schools, paupers, and the regulation by counties, cities, towns or other municipalities of their local affairs, shall be enacted to take effect upon the approval of any other authority than the General Assembly, unless otherwise expressly provided in this Constitution."

We think the argument of counsel that the statute under consideration takes effect only on the approval of such persons as wish to register and publish their marks and devices, is based on an entire misconception of the law. When this enactment came from the hands of the Legislature it was a complete statute, not depending for its approval or disapproval on any person or set of persons. But, like many other statutes, it operates on condition and becomes effective only when the conditions described in the statute exist. For example, this law can be made available only by persons who have thought proper to register and publish their marks or brands. If they do not choose to do this, then the conditions upon which the law becomes operative do not arise. The statutes contain a great many laws that become effective only when the conditions described in the statute exist; but, of course, this does not mean that they "take effect upon the approval of any other authority than the General Assembly." To illustrate, a statute making it an offense to sell personal property on which there is at the time a mortgage of record, becomes operative only when

the mortgagee puts his mortgage to record. If he chooses not to record it, then the statute does not apply. We have also a statute making it an offense to sell branded timber without the consent of the owner, and whether this statute becomes operative or not depends on whether the timber has been branded by the owner. While these and many other statutes come into effect only when certain described conditions arise, they are not, in the meaning of the Constitution, dependent upon the approval or disapproval of any other authority than that of the General Assembly. They merely lie dormant until called into active force by the existence of the conditions upon which they were intended to operate.

The cases of Columbia Trust Co. v. Lincoln Institute, 138 Ky., 804; Western & Southern Life Ins. Co. v. Com., 133 Ky., 292, and Tilford v. Belknap, 126 Ky., 244, relied on by counsel arose on states of case very different from this and have no application to the question here presented.

It is further suggested that that part of the act which provides that the use of the containers without the written consent of the person whose brand or device has been placed on them and recorded, shall be presumptive evidence of the unlawful use, purchase and traffic in such containers, is objectionable in that it changes the fundamental rule of criminal law, that the presumption of innocence attends the accused at every stage of the proceedings, and the State must prove his guilt beyond a reasonable doubt. This principle of criminal procedure is, however, nothing more than a rule of evidence, entirely within the competency of the Legislature to change. It merely makes evidence of one fact presumptive evidence of the existence of another fact; and, as said by the United States Supreme Court in Mobile R. R. Co. v. Turnipseed, 219 U. S., 35, 55 L. Ed., 78, "Legislation providing that proof of one fact shall constitute *prima facie* evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government. Statutes, national and state, dealing with such methods of proof in both civil and criminal cases, abound, and the decisions upholding them are numerous." To the same effect are Andricus v. Pineville Coal Co., 121 Ky., 724; Sizemore v. Com., 140 Ky., 338; Gossett v. Com., 159 Ky., 736.

We also find in brief for counsel considerable space devoted to a discussion of the authority of the Legislature to enact laws that appear to be opposed to what is called the "genius of our institutions," or contrary to some fundamental governmental principle which although not expressed in the Constitution may be looked to in ascertaining the validity of legislative acts. And it is said that this statute is an example of this character of legislation because it is out of harmony with the general spirit and purpose of our law and the basic principles on which they rest. We do not, however, find in this plausible generalization any ground on which to put the right of the court to set aside legislative action. Laws cannot be disregarded merely because they are supposed to be repugnant to some governmental principles that lie outside of constitutional limitations. The Constitution of this State, in sections 27 and 28, distributing the powers of government, confided to the legislative branch the authority to enact laws, and this authority the judiciary is not at liberty to interfere with unless the legislation violates directly or by necessary implication some provision of the State or Federal Constitution. Subject to this limitation, the policy of the legislation or the wisdom of the propriety of it, is not for the judicial branch of the government to decide. When the courts have exercised their jurisdiction in restraining the Legislature from transgressing constitutional bounds, they have reached the limit of their control. The people put in the Constitution such limitations as they wished to impose on the legislative branch, and within these limitations its activities are controlled by the Constitution; but outside of them it may act with a free hand, subject, of course, to the restraint imposed by the Federal Constitution.

So that when the validity of legislation is challenged in the courts, the inquiry is limited to the questions, what provision of the Constitution does it violate? What does it do or propose to do that the Constitution forbids? This thought is well expressed in Johnson v. Higgins, 3 Met., 514, where the court said:

"The duty, and sole duty, of this department of the government, when the constitutional power of the Legislature to enact a law is questioned, is to look to the provisions of the Federal and State Constitutions, and if they do not, in express terms, or by necessary and proper

implication, forbid the exercise of such power, the enactment must be adjudged valid and enforceable as a law. Beyond the constitutional restrictions thus to be interpreted, the only limits upon the State Legislature in enacting laws are its own wisdom, sound judgment and patriotism. And it may be added, that in doubtful cases, where it is not clear that the fundamental law has not been invaded, courts rarely, if ever, interfere to arrest the operation of legislative enactments. Respect for the wisdom of a co-ordinate department of the government, as well as sound policy, forbid such interposition, except upon clear and satisfactory grounds." And is more fully set forth in Cooley's Constitutional Limitations, 6th Ed., pages 192-208.

This brings us to the question raised that this legislation is forbidden by section three of the State Constitution, providing, in substance, that no grant of separate privileges shall be made to any man or set of men except in consideration of public service, and violates sections 59 and 60 of the State Constitution prohibiting special legislation in that it confers special privileges upon the persons whose property is covered by the act, and creates an arbitrary and unreasonable classification.

The features of the statute that are pointed out as being open to these objections are: (a) that it does not come within the police power of the State, and its sole purpose is the protection of the owners of certain described articles of personal property who are engaged in a limited line of business; (b) that it favors the interest of one or a few by affording them particular remedies that are denied under the general laws to others.

It will be noticed (1) that the statute is limited to "persons and corporations engaged in manufacturing, bottling or selling soda-waters, mineral or aerated waters, porter, ale, beer, cider, ginger ale, milk, cream, small beer, lager beer, weiss beer, white beer, or other beverages or medicines, medical preparations, perfumery, oils, compounds or mixtures, in bottles, siphons, tins or kegs, with his, her, its or their name or names or other marks or devices branded, stamped, engraved or etched, blown, impressed or otherwise produced on such bottles, siphons, tins or kegs or boxes used by him, her, it or them;" (2) that it makes it unlawful for any person or corporation to fill with these articles, or any of them, any of the described containers

marked or branded as mentioned, or to deface, cover up or remove any such marks or brands or to buy, sell or traffic in any of these containers without the written consent of or unless the same shall have been purchased from the person or corporation whose mark or device is on the container; (3) that the use of such container by any person other than the person or corporation whose device, name or mark shall be upon it without the written consent or purchase of the same for the sale therein of any of the articles mentioned, or for the purpose of trafficking in such containers or by having them in possession, shall be presumptive evidence of the unlawful use of such containers. There is a further provision about search warrants, but in view of what has been said upon this point, this section of the statute need not be again referred to.

It is, of course, manifest that in the enactment of this law the Legislature intended to, and did, create a class, and intended to, and did, protect this class in the use of the branded containers employed by it in its business. And to make more effective the purpose of the law, it provided means by and through which persons violating its provisions might be punished.

But so far as the mere question of the authority for legislative classification is concerned, there is no room for dispute. It has been time and again settled by courts everywhere that it is competent for the Legislature to create classes and deal with these classes, both in respect to civil as well as criminal rights and liabilities, separately, the only limitation being that the classification must rest upon some reasonable difference existing between the class selected for treatment and other classes of persons or property. So that the mere fact that the Legislature may confer upon a certain class rights and privileges not enjoyed by other classes is in itself no objection to the statute unless the classification is arbitrary or unreasonable. Com. v. Remington Typewriter Co., 127 Ky., 177; State Racing Com. v. Latonia Agr. Asso., 136 Ky., 173; Katzman v. Com., 140 Ky., 124; Connolly v. Union Sewer Pipe Co., 184 U. S., 540, 46 Law Ed., 679; Lindsley v. Natural Gas Co., 220 U. S., 61, 55 Law Ed., 369.

The criminal laws of the State are made up of classifications. Almost every criminal statute selects a class and treats it separately. The statutes that impose a punishment for forgery, larceny, embezzlement, de-

stroying property, obtaining money by false pretences, giving worthless checks, making false statements, selling mortgaged property, wrongfully ·converting money or property, and for selling misbranded seeds or foods, are pertinent illustrations of the right of classification and the extent to which it has been carried. So, too, this same rule of classification has been extended with equal freedom and equal authority to statutes not penal in their nature but only intended to regulate civil or contract rights and liabilities. Examples of this character · of legislation are found in the banking laws, the insurance laws, laws relating to negotiable instruments, and laws regulating telephone and telegraph companies, common carriers, and the sale· of foodstuffs.

It is further true that the new, diverse and multiplied activities along all lines of human endeavor are all the time making classification and selection more indispensable and broadening the field of its application. There comes into view almost every day some new discovery or invention or some new method of business requiring at the hand of the Legislature some special treatment; and, therefore, reasonable legislation having for its purpose the creation of classes and their separate treatment should .not be interfered with on the ground that it is unreasonable or arbitrary, unless it plainly appears to be and is an effort to confer some undue privileges in excess of the lawful rights of the persons or businesses affected, or to deny to the persons or businesses affected some privilege to which they are fairly entitled. So that the question whether the classification here made is reasonable depends on whether the class of property selected for separate classification and treatment is of such a character as that it may reasonably be set apart in a class by itself. We think it is.

The Statute, as was said by the Massachusetts court in Com. v. Anselvich, *supra,* "appears to have three objects, of which one is to protect the public from fraud and deception by preventing the unauthorized use, a second time, of vessels or receptacles originally marked in such a way as to indicate their contents together with the source from which they came; another is to protect the manufacturer or dealer from loss of profits or reputation by the unauthorized use of his property to deceive the public by a sale of an inferior article in such a manner as to indicate that it was manufactured or

put up by him; and the third is to aid the manufacturer or dealer in protecting and preserving a kind of property, which from its nature and use, is peculiarly liable to be misappropriated by careless or dishonest persons."· And the accomplishment of these objects, affecting as they do the public good, authorizes the Legislature to put the persons and businesses treated of in a class by themselves.

It is true that the statute protects persons engaged in the business of manufacturing articles and putting them in the character of containers described, to a larger extent than the general laws afford protection to other persons engaged in the manufacture of useful articles, and it may be conceded that the legislation might well have more specifically described the articles that could be placed in these containers intended to be protected. But the fact that the owners of these containers are afforded a greater measure of protection than the owners of other containers, or the fact that the act might have been more specific, affords no reason for condemning it. There are numerous criminal statutes in force that afford protection to the persons whose property or private rights it is made an offense to destroy or disturb, but it has never been thought that these statutes were objectionable on account of the measure of private protection they afforded.

As said by Freund on Police Powers, section 298, "In other words, where a public interest coincides with a stronger private interest, it would seem to be no fatal defect to leave the protection of the public to private action. Practically nearly all legislation for the prevention of fraud operates in this way."

If statutes to prevent fraudulent practices were to be held objectionable merely because they protected the private rights of the individual on whom it was attempted to practice the fraud, there could be little or no preventive legislation along this line, because every act having for its purpose the prevention of fraud and the punishment of persons who commit fraud necessarily affords protection to the persons who might be defrauded except for the statute.

In the cases of Hodwich v. Walker, Gordon Laboratory Co., and State v. Schmuck, *supra,* the Illinois and Ohio courts appear to have been largely influenced to hold legislation like this unconstitutional upon the ground that it was class legislation, intended solely for

the protection of the persons engaged in the manufacture of articles and their sale in these containers, and to afford such persons, through the agency of the criminal law a means of recovering their property. Of course if this were the only purpose of the law, and the protection of the public from fraud was not one of its objects, the position of these courts would be unassailable. But we do not agree that the sole purpose of this legislation was to protect the owners of a certain class of property, although this protection follows as one of the incidents of the act. But, clearly, as we think, it was not the whole purpose of the act.

It is a matter of common knowledge that many of the most necessary articles in general use are put up and sold to the consumers in bottles, siphons, tins and kegs, and when these articles are put in containers having the brand of the manufacturer, the public have a right to and do rely upon the brand as an assurance that the contents of the container are as the manufacturers represent them to be, and as they have found them to be by practical use. If, however, any person who could secure possession of these containers could, without the consent of the owner of the brand, refill them with his own product and put them on the market, it is manifest that a fraud would be practiced on the public. They would be buying articles under the belief that they were the product of the concern whose name was branded on the container, when, in truth, they were the product of some other concern having no connection whatever with the manufacturer who put the goods out under his own name. That there are scores of unscrupulous persons who would take advantage of this condition and defraud the public, is scarcely open to question. But it is said that as the act permits the owner of the branded container to consent that some other person may use it, this affords as full opportunity to unscrupulous persons to practice a fraud on the consumer as they could obtain by the unauthorized use of the container. In a limited sense this may be admitted. But this circumstance does not detroy the protection afforded to the public by this act, as it is hardly fair to assume that persons who have established a good name and business would consent that it might be brought into disrepute by persons who would be inclined to put into the containers articles that did not correspond with the articles in these containers when

they were filled by the persons whose names were branded on them.

On the other hand, it is fair to assume that if, without the consent of the owner, some person should secure possession of these containers and fill them with material of his own manufacture, his only purpose would be to practice a fraud on the public by pretending to sell an article purporting to have been manufactured by a certain person, although such person had no connection whatever with it. So that the good in the law—the protection that it affords the public, and the opportunities to commit fraud that it curtails—outweigh so much its defects that upon the whole it may be classed as beneficial legislation, entirely within the competency of the Legislature to enact and not in conflict with the Constitution of the United States.

The judgment is reversed, with directions to overrule the demurrer.