## Greene v. Caldwell, Chairman, et al.

(Decided June 6, 1916.)

## Appeal from Franklin Circuit Court.

1. Statutes—Workmen's Compensation Act of 1916.—The workmen's compensation act of 1916 is free from any constitutional objections, and this being so, the wisdom and propriety of the legislation was for the law-making department of the government and the courts will not set it aside.

2. Statutes—Workmen's Compensation Act—Master and Servant—Allowing and Setting Aside Defenses.—The statute is not invalid because it abolishes the doctrine of fellow servant, assumed risk and contributory negligence in certain cases or because it permits these defenses to be made in other cases.

3. Statutes—Classification—Special Legislation—Constitutional Law.—An act that creates classes of employers and employes and deals with them as a class is not open to the objection that it is such class or special legislation as is forbidden by section 59 of the constitution.

4. Statutes—Compensation Board Not a Court.—The compensation board provided for in the act of 1916 is not a court. It is merely an agency of the State for the purpose of ascertaining facts, and an appeal to the courts is allowed from its decision.

5. Statutes—Change in Law as to Parent and Child.—An act that changes the business relations of parent and child from what they formerly were is not open to objection as the Legislature has full power to control the business relations between parent and child.

6. Statutes—Act Not Compulsory That Provides for Voluntary Acceptance.—The act of 1916 is an elective and not a compulsory statute and neither employer nor employe are brought under its provisions until they voluntarily accept them.

7. Statutes—Limitation on Right of Recovery Does Not Violate Section 54 of the Constitution.—Section 54 of the constitution, providing that the Legislature shall have no power to limit the amount that may be recovered for injuries resulting in death or to person or property, is not violated by a compensation act which permits individual employes to consent to accept a stipulated sum in satisfaction of injuries which may be received.

8.  Statutes—Public Policy of State—Police Power.—Workmen's compensation acts are authorized by the police power of the State which gives to the Legislature the right to regulate and control matters affecting not only the health and safety but the general welfare of the people individually as well as in classes.

9.  Statutes—Aliens—Discrimination Against.—The validity of so much of the act as provides that aliens and their dependents shall not receive the same compensation as persons who are not aliens, is not passed on. This 'section may be eliminated without affecting the remainder of the act.

R. S. ROSE and C. I. DAWSON, Amicus Curiae.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellant.

R. T. CALDWELL and R. C. P. THOMAS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In 1914 the legislature passed a workmen's compensation act which was declared unconstitutional in State Journal Co. v. Workmen's Compensation Board, 161 Ky. 562. In 1916 the legislature again enacted a workmen's compensation act, and the validity of this act, which was upheld in the circuit court, is drawn in question on this appeal.

Before considering the objections urged to the present law, it is well to have a clear understanding of the grounds upon which the act of 1914 was condemned. In the State Journal case, as appears from the opinion, counsel in opposition to the validity of the act urged many reasons why it should be set aside, but the court, after considering the various objections raised, found that only three of them presented substantial grounds upon which the act could be assailed. These were: (1) That the act violated section 54 of the constitution, providing that, "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property;" (2) that the act was compulsory in that both the employers and employes were compelled to accept its provisions, and being compulsory it deprived appellant of its property without due process of law in violation of section 54 of the constitution; (3) that the act was in contravention of section 241 of the constitution, providing that: "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful

act, then, in every such case, damages may be recovered for such death, from the corporation and persons so causing the same * * *."

In the course of the opinion, the court, in pointing out the availability of these objections as grounds for adjudging the act invalid, said that in limiting the compensation to which an injured person should be entitled to the amount specified in the schedule of the act the legislature violated section 54 of the constitution heretofore quoted; and further said: "But we think it is within the power and right of an employe to waive this limit of recovery for injury, by contract, if such contract is freely and voluntarily made."

It was further said that the act was objectionable in compelling the injured employe to accept its provisions and take the compensation allowed by the board in lieu of any cause of action he might have against his employer whether he desired to do this or not, whereas "His election should be free, not even in the alternative. The law has no right to force him to accept the compensation fixed by this board by depriving him of his causes of action. * * * The legislature has no right to say to one of its citizens that 'unless you accept the provisions of a law impairing your constitutional rights, it will take from you other rights more valuable.' In the light of section 54 of the constitution, we must treat the contract made by the employe under the provisions of this act as compulsory and therefore void."

In reference to the burdens put on the employer who refused to come under the provisions of the act, it was said: "If any employer should determine that he wanted to carry his own risk and make his own contracts instead of having the law to make a contract for him, he can do so. * * * But what is the result? The law says to this employer: 'You may go on with your business industries, but if one of your employes is injured or killed, you shall not avail yourself of the following defenses: The defense of the fellow-servant; the defense of the assumption of risk; or the defense of contributory negligence." These are practically all the defenses the employer has, and they are taken from him unless he accepts the provisions of this act. He cannot, under these conditions, successfully defend any suit for personal injury. * * * We cannot subscribe to the proposition

that this is a voluntary contract, even on the part of the employer."

In upholding the contention that the act violated section 241 of the Constitution before set out, it was said that: "If an injury to an employe should result in his death, his personal representative is authorized to recover damages from the negligent person or corporation causing his death. This is an absolute right given by this section of the constitution to his personal representative to recover damages for such negligence as has resulted in his death. And it is immaterial, under this section of the constitution, whether the money recovered goes to the children or parents, or becomes a part of his personal estate. The disposition of the money after his death cannot affect the right of the personal representative to recover. It may go to his heirs, or it may become a part of his personal estate and go to his creditors. * * *

"It seems clear to us that such parts of this act as take from the personal representative or estate of a deceased employe, who left no dependents surviving him, any part of the compensation due such representative or his estate, and directs its payment into this fund for the benefit of other people, is a violation of the above section 241 of the constitution. The legislature has no right to limit the damages recovered, for the death of an employe negligently killed, to his dependents. Nor do we think the legislature has the right to take what is due the estate of one man and give it to another.

"It then necessarily follows that such parts of this act under consideration as give to this Board of Compensation, without the voluntary contract of the employe, the right to recover from the employer for the death of the employe leaving no dependents, and such other parts of the act as coerce the employe to consent or to make a contract that such compensation shall be paid into this compensation fund, are unauthorized and void."

Responding to other objections urged to the act, it was said: "A sufficient answer to all this is, that these are matters addressed entirely to the wisdom of the legislature and can be regulated as necessities may require. * * * The Legislature has the right to create

a compensation board and put it into operation free from the objectionable features of the present act. * * * And it is not the purpose of the court or the intention of this opinion to lay down any rule that will preclude the legislature from enacting a compensation act that will conform to the constitution, as we are clearly of the opinion that the legislature may, in conformity to the constitution, adopt an effective compensation law. But this court cannot consent that the legislature has the power to put this compensation act in operation by means of compulsory contracts.''

A petition for a rehearing was filed by counsel for the compensation board, and in response to this petition the court, in Kentucky State Journal Co. v. Workmen's Compensation Board, 162 Ky. 387, retracted some objections to the act pointed out in the opinion and stated more explicitly the material grounds upon which it was induced to hold the act invalid, saying:

''First. The provisions of the present compensation act, as far as they affect the employer, are unobjectionable, as they do not conflict with any provisions of the constitution.

''Second. Any employe coming within the provisions of the act may voluntarily agree to accept its provisions fixing and limiting his recovery in case of injury.

''Third. He may likewise voluntarily accept the provisions of the act fixing the amount that shall be recovered in the event of his death, and said sum should be paid to his dependents if he leaves any, and if not, to his personal representatives. The legislature has no power to direct that this sum shall in any event be paid into the compensation fund.

''Fourth. Some provisions should be made in the act whereby the employe signifies his acceptance of the provisions of the act by some affirmative act on his part. Silence on this subject should not be construed into acceptance.

''Fifth. Provision should be made in the act for appeal to a court of competent jurisdiction for review in all cases where compensation is denied or where a less sum is allowed by the board than that claimed by the injured employe.''

In the light of this opinion pointing out the objections to the act of 1914, while indicating that it was competent for the legislature to enact a compensation act

that would be free from the objectionable features of the act of 1914, it would appear that all we need do in this opinion is to ascertain whether the legislature conformed the act of 1916 to the opinion of the court by eliminating from it the clauses that rendered the act of 1914 invalid, and if this was done, to further ascertain and determine if any provisions or sections not found in the act of 1914 were inserted in the act of 1916 that would bring it within the condemnation of the constitution. If the act of 1916 is free from the obnoxious features of the act of 1914 and does not contain any new sections prohibited by the constitution, there would seem to be no sound reason why it should not be sustained, however much the policy or wisdom of it may be questioned or its economic benefits to both employer and employe doubted by those not favorable to legislation of this nature, for it has been pointed out by this court in many decisions that the judiciary will not interfere with the enactments of the law-making department of the state unless they are found to be clearly in contravention of some provision of the constitution. This well settled rule in the construction of statutes was thus stated in Com. v. Goldberg, 167 Ky. 96:

"Laws cannot be disregarded merely because they are supposed to be repugnant to some governmental principles that lie outside of constitutional limitations. The constitution of this state, in sections 27 and 28, distributing the powers of government, confided to the legislative branch the authority to enact laws, and this authority the judiciary is not at liberty to interfere with unless the legislation violates directly or by necessary implication some provision of the state or federal constitution. Subject to this limitation, the policy of the legislation or the wisdom or the propriety of it, is not for the judicial branch of the government to decide. When the courts have exercised their jurisdiction in restraining the legislature from transgressing constitutional bounds, they have reached the limit of their control. The people put in the constitution such limitations as they wished to impose on the legislative branch, and within these limitations its activities are controlled by the constitution; but outside of them it may act with a free hand, subject, of course, to the restraint imposed by the federal constitution. So that when the validity of legislation is challenged in the courts, the inquiry is

limited to the questions, what provision of the constitution does it violate? What does it do or propose to do that the constitution forbids?''

Coming now to consider the exhaustive argument of counsel opposing the legislation, we find it insisted that the act of 1916 contains provisions that in their operation and effect, although differing in form of expression from the act of 1914, compel the employe to accept the provisions of the act; and this being so, it is open to the objection that made the act of 1914 obnoxious to the constitution as pointed out in the opinion referred to. But after carefully considering this act, our opinion is that it conforms in the particular mentioned to the requirements of the opinion and hence is not compulsory on the employe, but leaves him the individual right to accept or reject its provisions whichever he chooses to do. Under the act of 1914, as was aptly said in the other opinion, ''When the employer accepts the provisions of this act the employe is automatically drawn into this so-called contract and made subject to its provisions.'' He could exercise no independent volition in the matter at all. It was not necessary that he should be asked to accept the law because when his employer accepted it, this act of the employer, in and of itself without any action on the part of the employe, subjected the employe to all the provisions of the law, and this arbitrary method by which the provisions of the act were imposed on the employe was one of the principal objections urged to the act of 1914 and the chief ground upon which the invalidity of the act was rested.''

In the act of 1916, however, the objectionable compulsory features of the act of 1914, in so far as the employe is concerned, were eliminated, and under the act of 1916 the employer can not, without the consent of the employe, bring him under the influence of the act, nor does it become operative as to the employe until he has voluntarily signified his willingness to accept its provisions by signing the paper described in section 74, which section reads as follows:

''Section 74. Election to operate under the provisions of this act shall be effected by the employe by signing the following notice, to-wit:

'' 'I hereby agree with (name of employer) to accept the provisions of chapter 33, acts of 1916, commonly known as the Kentucky Workmen's Compensation Act.'

"The election shall be effective from, and including, the date of signing, which shall be inserted opposite the employe's signature. In case an employe be unable to write, his mark shall be witnessed by a third person, who shall at the time read the notice to the employe. Any number of employes may sign the same notice, provided that there be conspicuously written or printed at the top of each page thereof on which signatures appear a copy of the above form of notice. If the employment be intermittent or be temporarily suspended, the original acceptance of the employe shall continue effective in subsequent employment under the same employer."

It is also provided in section 76 that: "At any time after electing to operate under the provisions of this act, either party may withdraw such election. * * * The employe desiring to withdraw such election shall file with the employer a written notice of withdrawal, stating the date when such withdrawal is to become effective. Following the filing or giving of such notices, the status of the party withdrawing shall become the same as if his former election had not been made; provided, however, that withdrawal shall not be effective as to any injury sustained less than one week after the filing thereof."

It is, however, provided in section 76b that: "Every employe affected by the provisions of this act who does not elect to operate thereunder, and his representative in case of death, shall, in any suit at law to recover damages for personal injury or death by accident arising out of and in the course of his employment against an employer electing to operate under the provisions of this act, proceed at law as if this act had not been enacted, and the employer may avail himself of the defenses of contributory negligence, negligence of a fellow servant, and assumption of risk as such defenses now exist at common law."

Passing for the moment section 76b, it will be seen that whether the employe accepts the act or not depends entirely upon his voluntary act. He can either accept or reject it as he pleases, and no one else has authority to do either of these things for him. It would seem, therefore, that the law itself is a sufficient answer to the argument that it is not an elective, but a compulsory statute

by which the employe is drawn under its provisions whether he desires to be subjected to them or not.

But it is said that when section 74 is read, as it should be, in connection with section 76b, it very plainly shows that it was the purpose of the legislature to evade, through the form of voluntary acceptance stipulated in section 74, the compulsory feature of the act of 1914, while coercing the employe by section 76b to accept the provisions of the act, although he might not voluntarily wish to do so. This coercion is found by counsel to exist in that part of section 76b which denies to the employe the right of recovery for injuries that may have been inflicted by the negligence of the employer, if the injuries were caused by the contributory negligence of the employe, or by the act of a fellow servant, or if the risk of the resulting injuries was assumed by the employe.

It is true that under section 76b the employe who does not elect to accept the act and who brings an action to recover damages for personal injuries sustained by the alleged negligence of the employer who has accepted its provisions, may be met with the defenses that he was guilty of contributory negligence, or that the injuries complained of were caused by the negligence of a fellow servant, or that he assumed the risk of the accident that resulted in his injury. But, clearly, the fact that the employer may rely on these defenses is far from denying to the employe the right to recover for injuries caused by the negligence of the employer. He still has his cause of action as he has always had, and the employer has only the right to rely on defenses that he always had the right to rely on, although it should be said that the common law definition of these defenses has been greatly modified by court opinions and that they do not now excuse the employer to the full extent they formerly did.

To what extent these defenses may be relied on by the accepting employer to defeat recovery by a non-electing employe, it would be obviously improper in this opinion to undertake to say.

It will be time enough to construe and define section 76b when we have a case arising between a non-electing employe and an accepting employer in which there is presented the question of the extent to which these defenses may be relied on by the employer to de-

feat a recovery. For the present it is sufficient to say that whether at all or in what degree this act puts in the way of the non-electing employe obstacles by which he was not theretofore hindered in suits against his employer, is really not a material inquiry in the case we have, as the right of election or non-election is left with the employe, and this is all the former opinion required.

We may, however, say that we do not agree that the changes in the existing law proposed in section 76b have the coercive influence attributed to them by counsel or that this section compels the employe to accept the act when he would not have accepted it if this change had not been made. When the section is looked to, this assumption is entirely too speculative to be made the basis of a charge of compulsion. What the employe will do when he comes to decide whether to accept or reject the act depends on the viewpoint from which he weighs for himself its benefits and disadvantages. One employe might be entirely willing to elect to accept its provisions with a full recognition of the effect of section 76b, while another employe, if this section were eliminated, would not accept it. But, however this may be, and without regard to the influence section 76b may have on the employe, the real and determining question by which the validity of this act upon the point under consideration must be decided is, has the employe the right to act for himself? Has he the right to exercise his voluntary, independent judgment and do as he pleases? The act declares that he has, and as was said in the former opinion, this is all that is necessary to remove the charge of compulsion.

It is also urged that although section 54 of the constitution provides that "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property," the General Assembly, in disregard of this section, has attempted by this act to limit the amount that may be recovered for injuries or death.

It is quite correct to say that this section operates as a restraint on the General Assembly and prohibits it from attempting to limit the amount of recovery in the cases described in the section. But in this legislation the General Assembly did not arbitrarily or at all undertake to limit the amount of recovery. It merely proposed a statute to a certain class of people for their in-

dividual acceptance or rejection. It did not assume to deprive these classes or individuals without their consent of any constitutional rights to which they were entitled. The General Assembly merely afforded by this legislation a means by and through which individuals composing classes might legally consent to limit the amount to which the individual would be entitled if injured or killed in the course of his employment.

Section 196 of the constitution provides that: "No common carrier shall be permitted to contract for relief from its common law liability." And it is suggested that as this act includes certain classes of common carriers which are permitted to accept its provisions, the acceptance of the act by these common carriers, if its provisions were not accepted by their employes, would have the effect of enabling the common carrier employer to limit his common law liability in violation of this section.

It was held in Davis v. C. & O. Ry., 122 Ky. 528, supported by a reference to section 196 of the constitution, that a contract between a common carrier and its employes by which in consideration of his employment the employe assumed all risk of death or accident or damage to him or his property sustained by the negligence of the employer, was against the public policy of the state and not binding on the employe. But the principle laid down in this and other cases involving like questions can have no controlling application here, because if we should put to one side this compensation act, it is clear that no employer, whether common carrier or not, could enter into a contract with his employe by which the employe, in consideration of his employment, could bindingly consent to waive any right of action he might have against his employer to recover damages for injuries sustained by the negligence of the employer. Individual contracts like this have always been and are now against the public policy of the state. This act, however, may modify in some measure this rule when the employer has accepted its provisions and the employe has not. But as to all other employers and employes the public policy of the state remains unchanged.

It is, of course, apparent that this act, which is the result of a widespread demand for a radical change in the existing law, has set up as to these classes to which it applies a new public policy for this state which it is

confidently believed will prove beneficial to all who come under its protection. And the authority for the legislation is found in the police power of the state; in the power to regulate and control by legislation all matters affecting not only the health and the safety, but the general welfare of the people individually as well as in classes into which they may reasonably be grouped; and this extension of the power has been sustained by the courts practically with unanimity.

Another ground for reversal is found by counsel in the fourteenth amendment to the constitution of the United States in which it is said, in part: ''Nor shall any state deprive any person of life, liberty or property without due process of law,'' and the contention is made that this act, by taking from the non-electing employer certain defenses that he had before its adoption, in effect deprives him of his property without due process of law. Many cases are cited by counsel in support of the asserted proposition, but we do not find the reasons advanced available for the purpose urged by counsel. Nor do we think the principle announced in the case of City of Louisville v. Cochran, 82 Ky. 15, relied on, applicable to the questions submitted.

The only ground on which this attack is rested is that the employer who elects not to accept the provisions of the act shall not, in any suit by his employe to recover damages for personal injuries or death arising out of and in the course of his employment, be permitted to defend the suit upon the grounds that the employe was guilty of contributory negligence, or that the injury was caused by the negligence of a fellow servant, or that the employe had assumed the risk.

Aside from the fact that it was held in the former opinion that the act of 1914 containing like provisions was free from objection so far as the employer was concerned, it may be again said that these burdens are not arbitrarily imposed on the employer, as it is left entirely to his election whether he will assume them by refusing to accept the provisions of the act or be relieved from them by electing to come under its provisions. The choice is put before him and he may act as he chooses. The only compulsion attempted to be exerted is that if he refuses to accept he cannot rely on these defenses which would be available to him if he did accept. But if this is compulsion, as claimed, the legislature had the

right at any time to withdraw the benefit of these de-fenses from employers and to make them liable at the suit of injured employes, although the injured employe may have been guilty of contributory negligence, or the injury may have been inflicted by a fellow servant, or the risk of injury may have been assumed. The employer had no vested right in these defenses. The law gave them to him and the law may take them away, and it could have taken them away without giving any election at all. This being so, it would seem clear that this legislation does not take the property of the employer without due process of law.

Objection is also found to section 11, which provided that "A minor, except where employed in wilful violation of any law of this state regulating the employment of minors, shall be deemed *sui juris* for the purpose of this act, and no other person shall have cause of action or right to compensation for any injury to or death of such minor employe for loss of service on account thereof, by reason of the minority of such employe. In the event of the award of a lump sum of compensation to such minor employe, payment shall be made to the guardian of such minor." And it is insisted that this section is open to serious complaint on account of the radical changes it works in the long existing law in respect to the mutual obligations of parent and child.

It is true that this legislation does make material changes in the law of parent and child; but a sufficient answer to all the objections urged is that the legislature, in undertaking to fix the status of minors under this act, was not restrained by any constitutional provision. It had the unquestioned power to make such changes in what may be called the business relations of parent and child as seemed to it advisable.

Section 22 of the act reads as follows: "Compensation under this act to alien dependent widows and children, not residents of the United States, shall be one-half of the amount provided in each case for residents; and the employer may, at any time, commute all future installments of compensation to alien dependents or the then value thereof. Alien widowers, parents, brothers and sisters, not residents of the United States, shall not be entitled to any compensation." This section, which was not in the act of 1914, is assailed because it is said to discriminate against aliens and their dependents and

is also a discrimination against American labor in favor of foreign labor; and apparently this charge is well founded. We do not, however, find it either necessary or proper, in determining the constitutionality of this act as a whole, to express any opinion as to the validity of this section. It is not so related to or connected with the other sections as that it might not be eliminated and leave a complete act in such form as would accomplish the chief purpose of the legislation. This being so, if this section should be declared to be unconstitutional, the remainder of the act would not be affected by its invalidity. Com. v. Goldburg, 167 Ky. 96, and cases therein cited.

In view of this it is obvious that the fitting thing to do is to postpone adjudging any question concerning this section until its construction and effect come before us in some case in which an alien, his relatives or dependents, are parties, and the objections to the section in its practical application to existing conditions are made an issue.

It is further insisted that the compensation board as created by this act is a court established in violation of section 135 of the constitution, reading: "No courts, save those provided for in this constitution, shall be established." This question was before us when we came to consider the act of 1914, and we did not then find that this compensation board was a court in the meaning of the constitution, and so the objection to the compensation board on this ground was overruled. But it was said in the extended opinion, in 162 Ky., that: "Provision should be made in the act for appeal to a court of competent jurisdiction for review in all cases where compensation is denied or where a less sum is allowed by the board than that claimed by the injured employe." In the 1914 act the right of appeal to the courts by a complaining employe from the decision of the compensation board was so limited as to practically deny any appeal and to make the judgment of the compensation board final. But the act of 1916 contains an elaborate scheme by which courts may review the final decisions of the compensation board, and it is provided, in part, in section 52 of the act that:

"Either party, within twenty days after the rendition of such final order or award of the board, may by petition appeal to the circuit court that would have

jurisdiction to try an action for damages for said injuries if this act had not passed, for the review of such order or award.

"No new or additional evidence may be introduced in the circuit court, except as to the fraud or misconduct of some person engaged in the administration of this act, and affecting the order, ruling or award, but the court shall otherwise hear the cause upon the record or abstract thereof as certified by the board, and shall dispose of the cause in summary manner, its review being limited to determining whether or not:

"1. The board acted without or in excess of its power.

"2. The order, decision or award was procured by fraud.

"3. The order, decision or award is not in conformity to the provision of this act.

"4. If findings of fact are in issue, whether such findings of fact support the order, decision or award.

"The board and each party shall have the right to appear in such review proceedings; the court shall enter judgment affirming, modifying or setting aside the order, decision or award, or in its discretion remanding the cause to the board for further proceedings in conformity with the direction of the court. The court may, in advance of judgment and upon a sufficient showing of fact, remand the cause to the board."

And it is further provided in section 52 of the act that: "Where an amount sufficient under existing laws to authorize an appeal to the Court of Appeals is involved, the judgment of the circuit court shall be subject to appeal to the Court of Appeals, the scope of whose review shall include all matters herein made the subject of review by the circuit court and also errors of law arising in the circuit court and upon appeal made reviewable by the Civil Code of Procedure where not in conflict with the provisions of this act." * * *

From these excerpts it will be seen that in all cases in which there arises a question affecting the substantial rights of either the employer or the employe, an appeal may be taken to the courts from the decision of the board upon the record made up in the hearing before the compensation board. So that the board in its settlement of disputes arising between employer and employe as to the compensation the employe is entitled to is really

nothing more than an agency created by the legislature for the purpose of assisting the courts in the preliminary findings of fact that may be necessary in executing the administrative features of the act. If the parties are satisfied with the decision of the board, it merely acts as a board of arbitration whose judgment is acquiesced in by the parties who have submitted the matter in dispute to its settlement; if they are not satisfied they may appeal to the courts.

As to the suggestion made that the members of this board are not arbitrators within the meaning of section 250 of the constitution because the employer and employe have no voice in the selection of the board, it may be dismissed with the comment that the employer and employe in accepting the provisions of the act thereby consent that the board of compensation may act as a board of arbitrators for the purpose of determining matters of difference between them. And the criticism that the act is faulty in not allowing a jury trial may be shortly answered by the statement that persons having a case in court may consent to a trial without a jury, and this is what the parties who accept this act agree to do.

The title of the act is also censured as being in violation of section 51 of the constitution, but this criticism is without merit. The title of the act is very elaborate; indeed, more so than the constitution requires, and covers every substantial feature of the law.

It is also pressed on our attention that the act is special and class legislation and for this reason violates section 59 of the constitution, providing that the General Assembly shall not pass local or special acts concerning a number of subjects that are mentioned in the section. It is, however, so well settled as not to need citation of authority that the right of classification when reasonably exercised is not opposed to either the state or federal constitution; and all that this act proposes to do is to create a class out of described employers and employes and deal with this class separately and apart from other classes of employers and employes. In making classifications like this it is obviously impossible to draw the line of separation with such accuracy as to include all who might well be brought within the class or to exclude all who might be left without it. It is, therefore, only required that the classification shall be

as reasonable and as practicable as conditions will permit, and this legislation, we think, conforms to this rule.

Neither is the act special legislation within the meaning of the constitution, as special legislation applies to particular places or persons as distinguished from classes of places or persons.

Some objection is also pointed out to the insurance provisions, but these are merely administrative and for the purpose of making more satisfactory and secure the compensation provisions of the act and do not contravene any section of the constitution.

In conclusion we may say that after a careful consideration of this progressive and beneficial legislation and of all the material arguments advanced by counsel in opposition to its validity, we are convinced that as a whole the act is not open to any constitutional objection. The legislature in its enactment was careful to avoid the objections found to exist in the act of 1914 and to keep it free from other fundamental faults that might affect its validity.

It may be true that there are sections and parts of sections relating to administrative features of the act that need reforming, and, indeed, it would be singular if structural defects could not be found in so comprehensive and complicated a piece of new and remedial legislation dealing with a subject-matter that directly affects so many people and so many business concerns. But when the board charged with the administration of the law comes to apply it to the practical conditions it was designed to regulate, these defects, whatever they may be, will surely be discovered, and when they are, the legislature can, and we have no doubt will, from time to time, correct them in such manner as the needs of the persons and businesses affected may seem to require.

We have not, in the course of the opinion found it useful to support what has been said by authority, although there is abundant that might be found sustaining our conclusions, as may be seen by an examination of Ives v. South Buffalo R. Co., 201 N. Y. 271, 34 L. R. A. (N. S.) 162; State v. Clausen, 65 Wash. 156, 37 L. R. A. (N. S.) 466; Cunningham v. Northwestern Improvement Co., 44 Mont. 180; Borgnis v. Falk Co., 147 Wis. 327, 37 L. R. A. (N. S.) 489; State v. Creamer, 85 Ohio St. 349, 39 L. R. A. (N. S.) 694; City of Milwaukee v. Miller,

154 Wis. 652, and the very full note to this case in L. R. A. 1916A, page 1; Jeffry Mfg. Co. v. Blagg, 233 U. S. 571, 59 L. Ed. 364.

Wherefore, the judgment is affirmed. The whole court sitting.