## Ashland Iron & Mining Company v. McDaniel, et al.

(Decided February 12, 1924.)

### Appeal from Boyd Circuit Court.

1. Master and Servant—Compensation Act Liberally Construed.—The workmen's compensation act is liberally construed, in order to effectuate its purposes, which are to afford a speedy and scientific adjustment of compensation for injuries sustained by an employe, arising out of and occurring in the course of his employment, and caused by traumatic accidental injury.

2. Master and Servant—Compensation Board has Exclusive Original Jurisdiction.—The workmen's compensation board has exclusive original jurisdiction to hear and determine the matters within the purview of the workmen's compensation act, except as to those in which alternate relief is authorized, and even as to those, if the injured party elects to seek compensation by filing a claim with the board.

3. Master and Servant—Compensation Award Not Subject to Collateral Attack.—In an action by dependents to enforce an award of compensation for death of an employe the employer cannot set up the defense that the award was void for want of jurisdiction in the board to allow compensation, because the accident which caused death did not arise out of the employment; the claim being that the board made an honest mistake of law (that is, of undisputed facts), the employer's remedy being by appeal.

4. Master and Servant—Compensation Board Arbitrators with Statutroy Powers.—The workmen's compensation board may be regarded as a legally constituted board of arbitrators, with the matters for submission prescribed by statute, with the right to either party of having the award reviewed by an appeal to the circuit court.

ROBERT T. CALDWELL and H. VAN ANTDERP, JR., for appellant.

JAMES B. ADAMSON, W. D. O'NEAL and DYSARD & MILLER for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

A. C. McDaniel, a youth 18 years of age, was one of a party of four known as the "gin gang" engaged in moving dolomite barrels from a point on the upper floor of appellant's mill to a point on the ground floor. A traveling crane operated by an employe sitting in a cage would be run to a point over the barrels, and the "gang" would enclose the barrel in a rope sling and attach this to the crane hooks, whereupon the craneman would elevate the load and run the crane to the east end of the building over a rectangular opening in the floor known as the "pit," which was enclosed by a railing called the "cage," and would then lower the barrel through this pit 27 feet to the ground below. The "gang" would walk down a stairway provided for the purpose and release the barrel and roll it to its place and then return up the stairway for another, the rope being left attached to the crane which was also elevated and returned.

There were notices posted in the craneman's cage and at some other places in the building forbidding workmen hanging on the crane ropes. McDaniel had been engaged at the work for five or six months and it seems occasionally violated this rule and had been corrected for it a month or so previous to the day of the injury.

On that day, after delivering one of the barrels on the ground floor, instead of walking back up the stairway, he held to the rope and was elevated to the floor above in safety. On the ensuing trip each of the "gang" took hold of the rope, but as the crane started to ascend, all but McDaniel let loose and he was elevated as before, the other three using the stairway.

It appears that the craneman could not see him until he reached almost to the railing around the cage. At that time there was some excitement among the others, who shouted to let him down. McDaniel himself made an outcry but it was rather in a bantering sort of way; the noise of the mill prevented the craneman from hearing them and he undertook to elevate the crane sufficiently for McDaniel to pass over the rails, but the rope was so long that he was unable to do this and in the attempt the blocks of the crane were brought together and either broke the electric wire by which they were attached or formed a short circuit by which it was burned, causing both McDaniel and the blocks to fall into the pit, the

blocks falling on him and fracturing his leg. An operation was performed but he died shortly thereafter.

A claim was filed by his dependents before the workmen's compensation board seeking compensation therefor. This was resisted by the company on the theory that the injury was the result of a "sportive" act or was due to the wilful misconduct of decedent, and did not arise out of or in the course of his employment.

At the hearing the above facts were shown, and there was evidence that as he lay in the pit McDaniel was asked how it occurred and answered, "playing, hanging on the end of the rope."

In its opinion the board said: " . . . we think the means and manner by which decedent tried to ascend from the ground to the upper floor did not place his act of ascending outside the course of his employment, and we think that it may be fairly said that deceased acted in the belief that he could ascend by the rope as he had done on the previous trip. It was his duty to go back to the upper floor for the purpose of loading more barrels of dolomite to the crane, and while a person of greater experience and more mature age would have used the stairway, we cannot say that decedent was guilty of willful misconduct, although his act in so doing constituted negligence on his part. It is apparent the deceased failed to obey a lawful and reasonable rule of his employer, provided for his own safety, and that the accident resulting in his own death was caused by the intentional failure of the decedent to obey a lawful and reasonable rule of the company in violation of section 29 of the act which justified the 15% penalty. . . . Under the law the burden of proof was on the defendant to show that decedent's death was caused by willful misconduct and under all the circumstances and facts, we cannot sustain this defense."

It also found as a fact that:

"2nd. He, McDaniel was working with the dolomite gang and after delivering a barrel of dolomite from the upper floor to the ground below, he took hold of the rope attached to the crane for the purpose of ascending to the upper floor. The upper and lower crane blocks came together, breaking the cable which let the deceased fell to the ground below, resulting in his death."

Compensation was awarded in conformity with this opinion. The employer filed a petition for appeal as provided in section 4935 Ky. Statutes, but summons was not issued thereon within the proper time and the appeal was dismissed. The award was not paid and the dependants filed suit in the circuit court for its enforcement. This was resisted by the employer on the ground that the award was void for want of jurisdiction in the board to allow compensation, because the accident which caused McDaniel's death did not arise out of his employment as is required by section 1 of the workmen's compensation act. Ky. Stats., section 4880. A demurrer was sustained to this response and judgment entered enforcing the award, from which this appeal is prosecuted.

Willful misconduct is not stressed in this court, but it is urged that the facts relied upon as to the other defenses are undisputed and thereby they are established as a matter of law, that the injury was occasioned by a sportive act and did not arise out of or in the course of the employment; that this was a jurisdictional question and thereby the board was without authority to render the award and for that reason it is void and can be attacked collaterally.

This act has been in operation since its adoption in 1916, and a number of its provisions have been construed by this court and at all times a liberal construction has been adopted in order to effectuate its purposes, which are to afford a speedy and scientific adjustment of compensation for injuries sustained by an employee arising out of and occurring in the course of his employment and caused by traumatic accidental injury. In matters arising within its purview all the old remedies and defenses are eliminated and an entirely new machinery substituted for the law courts, except in matters of review or in certain instances mentioned in the statutes where alternate relief is afforded.

Sections 73-74 of the act (4956-4957 Ky. Stats.) provide for a voluntary acceptance of its provisions by the respective parties. Section 1 (4880 Ky. Statutes) provides: "It (the act) shall effect the liability of employers subject thereto to their employees for personal injuries sustained by the employee by accident arising out of and in the course of his employment, or for death resulting from such accidental injury, provided however, that personal injury by accident as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by acci-

dent, nor shall they include the results of a pre-existing disease."

Section 3 (4882 Ky. Stats.) provides that when both parties have accepted the provisions of the act, " . . . the employer shall be liable to provide and pay compensation under the provisions of this act and shall be released from all other liability whatsoever." A further provision being that where injury is occasioned through the deliberate intention of the employer alternate relief may be had under the provisions of the act or under the common law, at the option of the injured party or his representative.

Section 39 (4920 Ky. Stats.) creates a board of three members to administer the act. Section 49 (4932 Ky. Stats.) provides: "If the parties fail to reach an agreement in regard to compensation under this act . . . either party may make written application to the board for a hearing in regard to the matter at issue and for a ruling therein."

Section 50 (4933 Ky. Stats.) provides that the board or one of its members shall hear the parties at issue and their representative and witnesses and render the award. Section 51 (4934 Ky. Stats.) provides for a review upon the part of the board of an award by one of its members. Section 52 (4935 Ky. Stats.) provides for an appeal to the circuit court from a decision of the board and prescribes the matters that may be reviewed in the court. It further provides that if a review is not filed as provided in sections 4933-4934 Ky. Stats. that the order or award of the board shall be conclusive and binding as to all questions of fact. Section 53 (4936 Ky. Stats.) provides for an appeal to this court from a decision of the circuit court. Section 60 (4943 Ky. Stats.) reads: "All questions arising under this act, if not settled by agerement of the parties interested therein with the approval of the board shall be determined by the board except as otherwise herein provided for."

The validity of these provisions as well as the act itself has been upheld in an exhaustive opinion in Greene v. Caldwell, 170 Ky. 571.

In Jellico Coal Co. v. Adkins, 197 Ky. 684, it was held that "occupational diseases" are not compensable under the statute and that the board is without jurisdiction to entertain a claim for that character of injuries, and that as to them the common law remedies are still in force and may be invoked, even though a claim

therefor is first filed and submitted to the compensation board. On the other hand it is pointed out therein that when both parties have accepted the benefits of the act, that the compensation afforded by it is exclusive of common law remedies for all injuries within its purview, except as to intentional injury or intentional violation of laws regulating child labor in which alternative relief is given.

True the injury must arise out of and in the course of the employment and recovery will be denied if these facts do not appear. But these are questions among others that arise in the consideration of the claim and all must be determined by some tribunal. The only tribunal provided for that purpose is the compensation board, as above pointed out, sections 4932-33-35-43 Ky. Stats., *supra*. Certainly it was not intended for the courts to determine this question in advance as a prerequisite to filing a claim before the board, nor is the approval of the court necessary to validate the award unless there is a petition for review; so that it would seem that the legislature intended to vest the board with exclusive original jurisdiction to hear and determine the matters within the purview of the act, except as to those in which alternate relief was authorized, and even as to those if the injured party elects to seek compensation by filing a claim with the board.

The distinction between the Atkins case and this is that in the former the injury was cognizable at law, and not compensable under the statute, therefore there was no issue to be submitted to the board. Here the injury is not cognizable at law under any circumstances, but is compensable under the statute if it arises out of and in the course of the employment, and the board is the only tribunal authorized to pass upon that question. Under the statute, if it errs in its judgment, this error may be reviewed on appeal but is not the subject of collateral attack.

As said in Greene v. Caldwell, *supra*:

"From these excerpts it will be seen that in all cases in which there arises a question affecting the substantial rights of either the employer or the employe, an appeal may be taken to the courts from a decision of the board upon the record made up in the hearing before the compensation board. So that the board in its settlement of

disputes arising between employer and employe as to the compensation the employe is entitled to, is really nothing more than an agency created by the legislature for the purpose of assisting the courts in the preliminary findings of fact that may be necessary in executing the administrative features of the act. If the parties are satisfied with the decision of the board, it merely acts as a board of arbitration whose judgment is acquiesced in by the parties who have submitted the matter in dispute to its settlement; if they are not satisfied they may appeal to the courts.

"As to the suggestion made that the members of this board are not arbitrators within the meaning of section 250 of the Constitution because the employer and employe have no voice in the selection of the board, it may be dismissed with the comment that the employer and employee in accepting the provisions of the act thereby consent that the board of compensation may act as a board of arbitrators for the purpose of determining matters of difference between them."

In other words, the board of compensation may be regarded as a legally constituted board of arbitrators, with the matters for submission prescribed by statute, with the right to either party of having the award reviewed by an appeal to the circuit court.

Considered in this light, this question was one of the matters at issue. No fraud is intimated and the most that is claimed is that the arbitrators made an honest mistake of law (that is of undisputed facts). Conceding all of this it constitutes no ground of impeachment of the award at common law. Hensley v. Wasiota & B. M. Ry. Co., 153 Ky. 17; Adams v. Ringo, 79 Ky. 211; Reager's Admrx. v. Pennsylvania Co., 169 Ky. 479; Rudd v. Jones, 4 Dana 229; Golbroth v. Golbroth, 10 Rep. 935; Johnson v. Dulin, 10 Rep. 403; 5 C. J. 178; Stone v. Baldwin, 80 N. E. 890; Beckett v. Wigglesworth, 179 S. W. 898.

We have before pointed out that if the matter was within the purview of the act the only statutory impeachment of this award was by appeal. In this view of the case we deem it unnecessary to decide whether there was suffiicient evidence to sustain the award, a question that might have been raised on direct appeal.

Wherefore, judgment is affirmed.