**Junius L. SIMMONS, Appellant,**

**v.**

**CLARK CONSTRUCTION COMPANY and Towers Motor Inn, Inc., Appellees.**

**Oliver Lee PATE, Administrator of the Estate of Walter Allen Pate, Deceased, Appellant,**

**v.**

**CLARK CONSTRUCTION COMPANY and Towers Motor Inn, Inc., Appellees.**

Court of Appeals of Kentucky.

March 29, 1968.

safety belts used by or for Simmons and Pate were furnished exclusively and maintained by Clark. The scaffold upon which the two workmen were hoisted was suspended from a cable which was raised and lowered by a large crane operated by Clark. To a hook at the end of the crane's cable were attached cable harnesses supporting either side of the scaffolding. At each end of the scaffold there were clamps to which the cable was attached.

The two men were hoisted, and while working at either the 9th or 10th floor the free end of the cable supporting one end of the scaffold slipped through the clamp, leaving that end of the scaffold unsupported. It dropped causing the scaffold to be suspended in a vertical position. The men were thrown against their safety belts which broke and they fell approximately 80 feet. Pate was killed and Simmons was seriously, permanently and painfully injured.

Both men were covered by Rold's Workmen's Compensation Insurance. Simmons claimed and was awarded Workmen's Compensation payments but Pate's administrator made no claim under the Act. Pate had no dependents.

George S. Wilson, III, Wilson & Wilson, William M. Gant, Gant & Carroll, Owensboro, for appellants.

Ridley M. Sandidge, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellees.

STEINFELD, Judge.

On December 11, 1962, Clark Construction Company (hereinafter Clark) contracted with Towers Motor Inn, Inc. (hereinafter Towers) to erect a building in Owensboro, Kentucky. On October 24, 1963, Junius L. Simmons and Oliver Lee Pate, regular employees of Edward Rold, d/b/a Owensboro Window Cleaning Service, a subcontractor of Clark, were directed by Clark to mount a horizontal scaffold or hoist to clean the metal and glass on the exterior of that building. The scaffold, hoist, all appliances and telephone linemen type Simmons and Pate's administrator each brought suit against Clark and Towers in which they claimed that the injury to Simmons and the death of Pate were caused and brought about by the unsafe working conditions and the failure of Clark and Towers to furnish safety devices and scaffolding according to law. KRS 338.030; 338.160. The claim against Towers also was predicated upon the theory that the work was inherently dangerous and that Towers was responsible for the negligence of Clark even though Clark was an independent contractor. State Automobile Mutual Insurance Company intervened for the purpose of obtaining reimbursement for any monies which it had paid or would pay to Simmons under the provisions of the Workmen's Compensation Act. The actions were consolidated and were concluded by the entry of a summary judgment denying

relief from which Simmons and Pate's administrator appealed.

KRS 446.070 was adopted in 1892. It provides:

"A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

In 1916 the Workmen's Compensation Act became effective and brought under the provisions of that Act (except where specifically excluded by the Act) all claims of employees against their employers in instances in which the two had agreed to coverage by the Act. KRS 342.015(1). KRS 342.060 which is a part of that Act provides in part that:

"A principal contractor, intermediate or subcontractor shall be liable for compensation to any employe injured while in the employ of any one of his intermediate or subcontractors and engaged upon the subject matter of the contract, to the same extent as the immediate employer. * * *."

The latter statute was construed in Whittenberg Engineering and Construction Co. v. Liberty Mutual Ins. Co., Ky., 390 S.W.2d 877 (1965) to mean that the general contractor is, in effect, the employer of the employee of the subcontractor and enjoys the legal immunity of an employer from an action by the employee of the subcontractor when liable for compensation. To avoid KRS 342.015(1), 342.060 and Whittenberg the two claimants rely on the sequence of enactments of statutes which we will discuss, and they claim that the alleged immunity of Clark under those statutes violates Sections 54 and 241 of the Kentucky Constitution.

KRS 338.030 is the safe place of employment law but does not make the employer or any one else an insurer. Crush v. Kaelin, Ky., 419 S.W.2d 142 (1967). KRS 338.160 requires that safe devices be supplied to persons engaged in the type of work that Simmons and Pate were performing. Both statutes were adopted long after the Workmen's Compensation Act (KRS Chapter 342) became the law of this state. Appellants contend that claims asserted in reliance on either of those two statutes are not embraced by the Workmen's Compensation Act. They also argue that KRS 446.070 when read together with KRS 338.030 and 338.160 reveals that a conflict exists.

Appellants cite Morton v. Auburndale Realty Co., Ky., 340 S.W.2d 445 (1960); Nashville Bridge Co. v. Marsh, 212 Ky. 728, 279 S.W. 1099 (1926); Gannon v. Chicago, M., St. P., and P. Ry. Co., 13 Ill.2d 460, 150 N.E.2d 141 (1958). The cited cases do not convince us that there is merit in the contention made by appellants. When KRS 338.030 and 338.160 were enacted there was neither specific nor implied repeal of the Workmen's Compensation Act. Miller v. Scott, Ky., 339 S.W.2d 941 (1960). There is no conflict between those safety standard laws and the provisions of the Workmen's Compensation Act.

In Davis v. Solomon, Ky., 276 S.W.2d 674 (1955), we said:

"It seems clear to us that in the event of an accident arising out of and in the course of employment, where the employer and employee have elected to operate under the Workmen's Compensation Act, compensation may only be obtained in a proceeding before the Workmen's Compensation Board (except for an intentional injury inflicted by the employer as provided in KRS 342.015(2)). The Board has original and exclusive jurisdiction of all claims within the purview of the Act. Ashland Iron & Mining Co. v. McDaniel's Dependents, 202 Ky. 19, 258 S.W. 943; Moore v. Louisville Hydro-Electric Co., 226 Ky. 20, 10 S.W.2d 466. The purposes of the Act would be defeated if independent actions to recover damages for injuries or death caused by a compensable accident were permitted. Sturgill's Adm'r v. Howard, 218 Ky. 57, 290 S.W. 1048;

Morrison v. Carbide & Carbon Chemicals Corporation, 278 Ky. 746, 129 S.W.2d 547."

We reject both contentions and hold that the Workmen's Compensation Act is a bar to the claims made against Clark. McEvilly v. L. E. Myers Co., 211 Ky. 31, 276 S.W. 1068 (1925). Also see Peters v. Radcliff Ready Mix Concrete, Inc., Ky., 412 S.W.2d 854 (1967).

■ Appellants argue that Sections 54 and 241 of the Kentucky Constitution prohibit the application of the immunity provisions of the Workmen's Compensation Act to Clark. Section 54 provides:

"The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."

The part of Section 241 upon which they rely states:

"Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every case, damages may be recovered for such death, from the corporations and persons so causing the same. * * *."

■ The constitutionality of the Act as to claims between employer and employee is well established. Greene v. Caldwell, 170 Ky. 571, 186 S.W. 648 (1916); Norrington v. Charles E. Cannell Co., Ky., 383 S.W.2d 137 (1964). We are unwilling to depart from our decision in McEvilly v. L. E. Myers Co., 211 Ky. 31, 276 S.W. 1068 (1925) that an employee of a subcontractor could not successfully sue the principal contractor for common law damages. Also see Miller v. Scott, Ky., 339 S.W.2d 941 (1960); and Peters v. Radcliff Ready Mix Concrete, Inc., Ky., 412 S.W.2d 854 (1967).

■ Relying upon Jennings v. Vincent's Adm'x, 284 Ky. 614, 145 S.W.2d 537 (1940) and other cases, appellants contend that Towers, the owner, is liable on the theory that the work Simmons and Pate was doing was inherently dangerous and that the owner was responsible even though Clark was an independent contractor. In Jennings we said:

"* * * the general rule regarding the liability of the owner of property as to injuries and damages resulting from the acts of an independent contractor is that such owner is not liable unless the work to be done by the independent contractor is in itself a nuisance, or necessarily results in a nuisance, or unless the work or the instrumentality for doing it is inherently dangerous. But where the work is not a nuisance and is not inherently dangerous and the injuries or damages are caused by the negligent manner in which the independent contractor performs his task, then the owner is not liable. The rule as expressed in 39 C.J. 1331, § 504, is to the effect that if the work is of such a nature that it will probably, and not which merely may, cause injury if the proper precautions are not taken, the owner is liable; but if it can be accomplished without probable injury, except in the event of negligence, no liability attaches to the owner."

Appellants also cite Jones v. Russell, 224 Ky. 390, 6 S.W.2d 460 (1928) which upheld the "Scaffolding Act", now KRS 338.160 and say the opinion refers to workmen engaged in hazardous employment.

They argue that Kennerly v. Shell Oil Company, 13 Ill.2d 431, 150 N.E.2d 134 (1958) sustains their contention that Towers must be held liable. Kennerly was a suit by an employee of a general contractor against the owner of the premises on which he was working. The Illinois court held that the "Scaffolding Act" of that state imposed liability on the owner despite the fact that an independent contractor was performing the work. The Illinois act read:

"'Any owner, contractor, sub-contractor, foreman or other person, having charge of the erection, construction, repairing,

alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof, and any such owner, contractor, subcontractor, foreman or other person violating any of the provisions of this act shall upon conviction * * *' "

The court construed that statute as imposing the duty on the owner to furnish safe equipment even though that owner did not have charge of the erection of the building. It said that the act imposed "upon both the contractor and the owner the duty of complying with the provisions of" that law.

The Kentucky statute is distinguishable. It provides:

"No person employing or directing another to perform any labor in erecting, improving, altering, repairing or painting any structure shall knowingly or negligently furnish, erect or cause to be erected unsuitable or improper scaffolding, hoists, stays, ladders or any other structure that will not give proper protection to a person so employed or directed". KRS 338.160(1).

That law is directed to the persons either employing or directing the workmen in the performance of their duties. Towers did not employ Simmons or Pate and did not direct Clark or either of those men to use the scaffolding. It did not have the right or duty to direct how the work was to be done.

In Hotel Operating Company v. Saunders' Adm'r, 283 Ky. 345, 141 S.W.2d 260 (1940) a damage claim was made against an owner by the administrator of an employee of an independent contractor. The employee was electrocuted while working in an elevator shaft on the hotel premises. Various cases were discussed involving claims of workmen against the owner of premises. The rule announced in Owens v. Clary, 256 Ky. 44, 75 S.W.2d 536 (1934) was repeated as follows:

" 'The owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury. The same rule applies to the servants of the contractor, and to the subcontractor and his servants.' "

In Gulf Oil Corporation v. Bivins, (CCA 5) 276 F.2d 753 (1960) an employee of an independent contractor was engaged in reworking an oil lease and had gone into a cellar in connection with his work. The owner of the premises knew that there was a possibility of the collection of gas. It notified the subcontractor although the warning was not directly communicated to the employee who was injured when an explosion occurred. In adjudging that the owner was not liable to the injured workman the court said:

"At this point it may be observed that an owner or occupier of property is not liable for injury to the employee of an independent contractor or subcontractor in the absence of negligence on the part of the owner or occupier which caused or contributed to the injury. Humble Oil & Refining Co. v. Bell, Tex.Civ.App., 180 S.W.2d 970; Union Tank & Supply Co. v. Kelley, 5 Cir. 1948, 167 F.2d 811. It is sometimes said that the owner or occupier is under a duty to furnish a safe place to work for the employee of the independent contractor. This statement is too broad and is an oversimplification of the principle. More accurately phrased, the rule requires the owner or occupier to exercise ordinary care to keep the premises in a reasonably safe condition so that the employee will not be injured. McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391; Smith v.

Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853. Even as so stated, the rule is subject to qualifications as will be noted.

"Whether or not there is responsibility for the condition of the place of work may depend upon the control of the premises and the control over the conduct of the work by the person against whom liability is asserted. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99; Houston Pipeline Co. v. Peddy, Tex. Civ.App., 292 S.W.2d 364; Sunray Oil Corporation v. Allbritton, 5 Cir., 1951, 187 F.2d 475, rehearing denied 5 Cir., 188 F.2d 751, certiorari denied 342 U.S. 828, 72 S.Ct. 51, 96 L.Ed. 626; Gulf Oil Corporation v. Wright, 5 Cir., 1956, 236 F.2d 46. It has been said that in the absence of control there is no duty. Nance Exploration Co. v. Texas Employers' Insurance Association, Tex.Civ. App., 305 S.W.2d 621, certiorari denied Flowers v. Nance Exploration Co., 358 U.S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229."

We see no distinction between the claims made by Simmons and Pate's administrator and those advanced in Gulf Oil v. Bivins and in Hotel Operating Co. v. Saunders' Adm'r and the cases discussed therein. (See discussion of Hotel Operating Company v. Saunders' Adm'r, supra, in Entwistle v. Carrier Conveyer Corp., Ky., 284 S.W.2d 820 (1955).) The work the men were doing was "of such a nature that it (would not) probably cause injury if the proper precautions (were) taken" and it could have been "accomplished without probable injury", except for the negligence of Clark.

The lower court was correct in dismissing the claim against Towers. Edwards v. Johnson, Ky., 306 S.W.2d 845 (1957); Jennings v. Vincent's Adm'x, 284 Ky. 614, 145 S.W.2d 537 (1940); Hamblin's Adm'x v. Gatliff Coal Co., 278 Ky. 248, 128 S.W.2d 577 (1939); Young's Adm'r v. Farmers and Depositors Bank, 267 Ky.

845, 103 S.W.2d 667 (1937); Yellow Creek Coal Co. v. Lawson, 229 Ky. 245, 16 S.W. 2d 1043 (1929); Glover's Adm'r v. James, 217 Ky. 572, 290 S.W. 344 (1927); Nashville Bridge Co. v. Marsh, 212 Ky. 728, 279 S.W. 1099 (1926); White v. Olive Hill Fire Brick Co., 169 Ky. 834, 185 S.W. 107 (1916); Wells v. W. G. Duncan Coal Co., 157 Ky. 196, 162 S.W. 821 (1914); Kentucky Wagon Mfg. Co. v. Gossett, 142 Ky. 842, 135 S.W. 394 (1911).

The summary judgment in favor of all defendants was proper. CR 56.02.

The judgment is affirmed.

All concur.